# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2044

_____

United States of America,       *
           *
      Appellee,       *    Appeal from the United States
           *    District Court for the District
      v.       *    of Nebraska.
           *
Carmen Zamoran-Coronel, also known   *
as Lorena Carol-Lopez,       *
           *
      Appellant.       *

_____

Submitted: October 17, 2000

Filed: November 17, 2000

_____

Before BEAM, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges,

_____

BEAM, Circuit Judge.

Appellant Carmen Zamoran-Coronel appeals the district court's[1] ruling that she voluntarily consented to a search of her car. She also asserts the car was located within the curtilage of a dwelling. We affirm.

_____

[1] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska adopting the Report and Recommendation of United States Magistrate Judge Thomas D. Thalken.

On December 16, 1998, a law enforcement source notified Officer Gonzalez of the Omaha Police Department that a car driven by one Carol-Lopez and carrying methamphetamine would arrive that day in Omaha. The source described the car and provided an apartment address as its destination. The Omaha police established surveillance at the apartment and observed in a small parking lot behind the building a car matching the provided description. Officer Gonzalez and Sergeant Fidone observed Pedro Lopez-Zarazua leaving the apartment. After confirming that he lived there, they sought and received permission to search the apartment.

Returning to the apartment, Lopez-Zarazua entered first, followed by Officers Gonzalez and Henry, and Sergeant Fidone. The officers wore plain clothes, did not draw their weapons and identified themselves with their badges. Inside the apartment were Erika Jacobo, Maria Lopez-Cortez and a third woman who identified herself as Lorena Carol-Lopez, but who turned out to be defendant Carmen Zamoran-Coronel. Jacobo explained that she had just arrived from California in a car driven by the defendant. Having seen the car outside, Officer Gonzalez asked Zamoran-Coronel in English whether he could search it, to which she nodded her head. He then said, again in English, "yes or no" to which she replied "yes." He then asked her in Spanish "Would you permit me to search your car?" In Spanish she replied "Yes. Here are the keys" and handed him the keys to the car.

Without actually opening or entering it, Officer Gonzalez confirmed the keys fit the car. Meanwhile, Sergeant Fidone completed an English search consent form for Zamoran-Coronel. When Officer Gonzalez returned, Zamoran-Coronel told him that she understood some English. He then explained to her in English that the form gave the officers the right to search the car. He did not inform her of her <u>Miranda</u> rights at that time, nor did he inform her of her right to refuse the search. The form, which she then signed, did state that she had a right to refuse.

After obtaining Zamoran-Coronel's signature on the form, Officer Gonzalez asked Officer Henry to have his drug detection dog perform a drug sniff on the car. The dog alerted at the seams of both the driver and passenger side doors. The officers then returned to the apartment and told Zamoran-Coronel that they wanted to take the car to a police assembly area for further inspection. After hearing the request in Spanish, she again agreed. At the police garage, the officers found methamphetamine secreted inside the car frame.

The government charged Zamoran-Coronel with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). She moved to suppress the results of the search. After two hearings and findings of fact by a magistrate judge, the district court considered and denied the motion. The defendant thereafter pled guilty to the charge, conditioned on this appeal, and received a sentence of 48 months.

Zamoran-Coronel raises two issues. First, she contends she did not voluntarily consent to the search of her vehicle. Second, she argues the vehicle sat within the apartment's curtilage, requiring the officers to obtain a search warrant before performing any search. We review the district court's finding of consent for clear error, and review ultimate determinations of law de novo. United States v. Pena-Saiz, 161 F.3d 1175, 1177 (8th Cir. 1998).

Zamoran-Coronel first contends she did not voluntarily consent to the car search. She argues the totality of the circumstances, including the presence of law enforcement officers in the apartment's confines, her lack of education, her lack of fluency in English, the officers' failure to inform her of her right to refuse consent and her lack of prior experience with law enforcement, combine to render her consent involuntary.

The Fourth Amendment prohibits only unreasonable searches. U.S. Const. amend. IV. Searches voluntarily consented to do not offend this prohibition. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent is voluntary if it

constitutes "'an essentially free and unconstrained choice by its maker.'"  Id. at 225 (quoting Culombe v. Connecticut, 367 U.S. 568, 604-05 (1961)).  This determination requires examination of the totality of the circumstances surrounding both the environment of the encounter and the nature of the consenting party.  Id. at 226; United States v. White, 81 F.3d 775, 780 (8th Cir. 1996).  Our cases recount a variety of factors a court might consider in determining voluntariness, see United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990), but recognize that such factors "should not be applied mechanically."  Id.  The inquiry turns on the totality of the circumstances, which must demonstrate that "the police reasonably believe[d] the search to be consensual."  United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998).

We look first to the environment.  Lopez-Zarazua entered the apartment first, and explained the officers' purpose to those inside before they entered.  The officers identified themselves with their badges, all wore plainclothes although one wore a raid-vest, and none drew their weapons.  The officers sought permission at every step of the search.  No one was arrested until after the complete search of the vehicle, and the officers were not in the apartment long before consent was given.

Zamoran-Coronel argues the presence of up to four officers in the apartment's close confines negated the possibility of voluntary consent.  However, the mere presence of some police officers in a confined space does not necessarily exert coercion of a constitutionally-defective nature.  Police officers, whether uniformed or not, necessarily exert some moral and administrative authority.  Indeed, such authority and whatever naturally persuasive effect accompanies it, goes to the very core purpose for having visible officers entrusted with keeping the peace.  See United States v. Dupree, 202 F.3d 1046, 1050 (8th Cir. 2000) (finding "[n]o threat, intimidation, or physical force accompanied the request [for consent], other than that inherent in an investigative stop and protective frisk").  Such, however, does not offend the Constitution.  In Florida v. Bostick, for instance, the Supreme Court rejected the argument that given the "cramped confines of a bus," wherein officers might "tower over a seated passenger,"

-4-

the defendant could not have given voluntary consent to a search of his bags. 501 U.S. 429, 435 (1991). Similarly, we have held that consent may be voluntarily given even when seated in an officer's patrol car. Chaidez, 906 F.2d at 379.

The relevant inquiry rather is whether the officers did anything to affirmatively communicate to the defendant that she was not free to terminate the encounter or to refuse the consent request. Bostick, 501 U.S. at 435-37. See Bumper v. North Carolina, 391 U.S. 543, 550 (1968) (false claim to possess a valid search warrant precluded possibility of voluntary consent); United States v. Alberts, 721 F.2d 636, 640 (8th Cir. 1983) (same). See also Pena-Saiz, 161 F.3d at 1176-78 (finding involuntary consent where officers suggested to the defendant that she had no right to refuse a pat-down search). Only when officers so indicate, "by explicit or implicit means, by implied threat or covert force," does consent become involuntary. Schneckloth, 412 U.S. at 228. The record here suggests no such conduct. The environment did not render Zamoran-Coronel's consent involuntary.

The voluntary consent inquiry also requires analysis of the defendant herself. At the time of the search, Zamoran-Coronel was twenty-six years old and had completed high school education in Mexico through at least the ninth grade. She was not under the influence of narcotics or alcohol. After the officers entered the room and determined that she had driven the car matching the provided description from California, they asked her both in English and Spanish whether they could search it. She replied "yes" to both inquiries and handed Officer Gonzalez the keys. She also signed a consent form, although the officers did not read it to her. Zamoran-Coronel asserts that she had no criminal history of which the officers were aware, and had no previous experience with law enforcement that would have informed her understanding of what was occurring. The officers did not place her under arrest or read her the Miranda warnings until after she consented to the search.

Zamoran-Coronel asserts that under the totality of the circumstances, she did not believe she had a right to refuse. She argues her poor English, the officers' failure to review the consent form in Spanish or to tell her she could refuse consent, along with her lack of familiarity with law enforcement, render the consent involuntary.

Police officers bear no obligation to inform suspects of their right to refuse consent. Schneckloth, 412 U.S. at 231. Whether an officer did so constitutes "a significant, but not determinative, factor" in determining voluntariness. Chaidez, 906 F.2d at 381-82 (finding voluntary consent despite defendant's claim that he did not think he could refuse). In United States v. Cortez, 935 F.2d 135, 142-43 (8th Cir. 1991), we found voluntary consent despite the officer's failure to review the consent form with the defendant. In White, 81 F.3d at 780, we found voluntary consent despite the lack of either a search consent form or any instruction regarding a right to refuse. There, the court found the defendant's actions to be "consistent with a finding of voluntary consent." Id. The defendant did not object before or after the search, and opened the trunk for the officer. Id. See also United States v. Lyton, 161 F.3d 1168, 1171 (8th Cir. 1998) (finding voluntary consent despite lack of warning where defendant invited officer to check his truck for drugs and guns).

The government "must prove that [the defendant] consented to the . . . search or that the officers reasonably so believed." Sanchez, 156 F.3d at 878. There, the defendant asserted that his poor English prevented him from understanding what was asked of him, and therefore precluded a finding of voluntary consent. Id. However, the court credited the officers' testimony that the defendant appeared to understand questions directed to him, provided direct answers and gave express permission for the search. Id. Similarly, in United States v. Galvan-Muro, 141 F.3d 904, 907 (8th Cir. 1998), the defendant interposed his poor understanding of English and argued that he thought the search requests were in the imperative. However, we found voluntary consent as the officer had no difficulty understanding the defendant, and perceived no lack of understanding on the defendant's part. Id.

The facts of this case do not take it outside the confines of these authorities. Zamoran-Coronel clearly responded to Officer Gonzales' questions affirmatively and directly. He inquired, both in English and Spanish, whether he could search her car. She replied "yes" and signed a form to the same effect. Moreover, her conduct comports with voluntarily given consent. She did not object to the search before, during or after it. Moreover, she cooperated by handing over the keys. That no one informed her that she had a right to refuse merits little concern, as the evidence does not show that the officers engaged in any wrongdoing or constitutionally coercive conduct that would have suggested to a reasonable person that she had no such right. Zamoran-Coronel's emphasis on the consent form is misplaced. The form merely corroborated the consent that she had already given. On the facts determined by the district court, the defendant voluntarily consented to the search, and at the very least, the officers reasonably believed that she did so.

Having reviewed both the environment in which consent was given, and the nature of the person giving consent, we hold that the district court did not commit clear error in finding that Zamoran-Coronel voluntarily consented to the search of her car. Accordingly, we affirm.

Because we find that Zamoran-Coronel voluntarily consented to the search, and find no cause to discredit the district court's findings as to the order of events, we need not reach the defendant's curtilage argument. See Drummond v. United States, 350 F.2d 983, 989 (8th Cir. 1965).

We affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.