# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1293
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Rickey L. Smith, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2001

Filed: August 14, 2001
_____

Before WOLLMAN, Chief Judge, BOWMAN, and MAGILL, Circuit Judges.
_____

WOLLMAN, Chief Judge.

Rickey L. Smith appeals the district court's[1] denial of his motion to suppress. We affirm.

---

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

# I.

On the morning of March 3, 2000, officers conducting surveillance of the Omaha, Nebraska, bus station observed Smith and his traveling companion, Troy Bales, arrive on a bus from California. Smith and Bales carried very little luggage, and instead of entering the terminal with the other arriving passengers they walked around the parked buses and directly to the street, heading in the direction of a taxi stand. Based on their experience in law enforcement, the officers became suspicious that Smith and Bales were involved in illegal drug activities.

What occurred next remains somewhat unclear. According to police testimony at the suppression hearing held before a magistrate judge,[2] two officers followed Smith and Bales out to the street and initiated a conversation. After identifying themselves and displaying their badges, one of the officers questioned Smith and the other spoke with Bales. Smith was then asked if he would consent to a search of his bag, and he responded "go ahead." A third officer, who had been positioned with his partner across the street from the station, then searched one of Smith's duffel bags and discovered approximately 812 grams of marijuana and 108 grams of methamphetamine.

Smith's version of his encounter with police is different. At the suppression hearing, Smith testified that one of the officers grabbed him by the arm, "escorted" him away from the street, and restrained him as he was questioned. Smith also alleges that the two officers carefully positioned themselves in order to separate him from Bales. Finally, Smith testified that he did not verbally consent to the search of his bag, but

---

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

simply raised his arms in resignation when he realized that a search was inevitable. Smith's version of the encounter was generally corroborated by Bales.

Neither the magistrate judge nor the district court, which conducted a de novo review of the suppression issue, made explicit credibility findings regarding the differing testimony at the suppression hearing. The district court acknowledged that the officers had no reasonable suspicion to detain Smith or Bales, but concluded that no seizure occurred and that Smith voluntarily consented to the search of his bag. The court accordingly denied the motion to suppress. Smith subsequently entered a conditional plea of guilty to one count of possession with intent to distribute methamphetamine and was sentenced to forty-six months of imprisonment.

**II.**

On appeal, Smith argues that the officers illegally detained him at the bus station without probable cause and that his consent to search his bag was not voluntary. We review the question of whether a seizure has occurred de novo and the district court's determination of voluntariness for clear error. United States v. Mendoza-Cepeda, 250 F.3d 626, 628 (8th Cir. 2001).

The district court concluded that no seizure occurred "even accepting [Smith's] version of events." We question this conclusion, for although physical touching is only one aspect of the totality of the circumstances test we employ in determining whether a seizure occurred, United States v. White, 81 F.3d 775, 779 (8th Cir. 1996), we doubt that a reasonable person would feel free to "go about his business" with a police officer clinging to his arm. Id.

We need not further address the nature of Smith's encounter with the police, however, because we conclude that Smith's consent to search his bag was a sufficient act of freewill to purge the taint of any illegal detention. United States v. Kreisel, 210

F.3d 868, 869 (8th Cir. 2000). An illegal detention is only the start, and not the end, of our fourth amendment analysis, for the evidence seized from Smith's bag need not be suppressed if his voluntary consent provided an independent basis for the search of his bag. Id.; United States v. Thomas, 83 F.3d 259, 260 (8th Cir. 1996).

"The question of whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The government bears the burden to prove by a preponderance of the evidence that consent to search was freely given, White, 81 F.3d at 780, but awareness of the right to refuse is not necessary for consent to be voluntary, United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993). Certain of Smith's individual characteristics are relevant to the issue of the voluntariness of his consent, including (1) his age; (2) his general intelligence and education; (3) whether he was under the influence of drugs or alcohol; (4) whether he was informed of his Miranda rights; and (5) whether he had experienced prior arrests and was thus aware of the protections that the legal system affords to suspected criminals. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). The environment in which Smith allegedly consented to the search is also important, specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently by as the search occurred. Id.

After applying the Chaidez factors, the district court concluded that the government had met its burden of proof establishing that Smith voluntarily consented to the search of his bag. This finding is supported by the record. As a factual matter, the court determined that the arresting officers "made no threats, promises, misrepresentations or signs of intimidation." Furthermore, as Smith concedes on appeal, there is nothing about his background or character that would impede his ability

to voluntarily consent to the search of his bag. The record shows that Smith was 47 years old at the time of his arrest, that he apparently has no psychological problems, and that he has a high school education. The record also reveals that the encounter occurred in a public place during daylight hours, that the entire episode leading up to the search lasted only a few minutes, that Smith expressed no reluctance to speak with the officers or to permit the search of his bag, and that, at the very least, Smith indicated his consent to the search by raising his hands. In sum, the record indicates that Smith's consent was the product of an "essentially free and unconstrained choice." Barahona, 990 F.2d at 417. In light of the district court's explicit finding that the police "made no threats, promises, misrepresentations or signs of intimidation," we further conclude that Smith's consent was sufficiently voluntary to purge the taint of any illegal detention that may have occurred. Kreisel, 210 F.3d 869.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.