# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1082

_____

| | | |
|---|---|---|
| Randy A. Kleinholz, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| United States of America, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: June 10, 2003

Filed: August 6, 2003

_____

Before BOWMAN, BEAM, and BYE, Circuit Judges.

_____

PER CURIAM.

Randy A. Kleinholz appeals from the district court's[1] denial of his motion to suppress evidence and incriminating statements that flowed from law enforcement's initial entry into his house without a warrant. He argues his consent to the initial entry of his home was coerced and such initial entry was not otherwise justified. Irrespective of whether Kleinholz voluntarily consented, the initial intrusion of law

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

enforcement fits within an exception to the warrant requirement of the Fourth Amendment. We therefore affirm the denial of the suppression motion.

I

On November 22, 2001, Thanksgiving Day, law enforcement responded to an anonymous tip stating a methamphetamine laboratory was located in the front bedroom of a yellow house with a wheelchair ramp near the intersection of 33d and T Streets in Lincoln, Nebraska. Upon responding officers drawing near Kleinholz's house, they became aware of a chemical odor. Some of the officers suspected the smell was that of ether. After first conducting a consensual search of Kleinholz's neighbor's home, and discovering nothing, law enforcement focused on Kleinholz's house; both houses had wheelchair ramps.

Law enforcement approached Kleinholz's cream-colored house and began to question Kleinholz and a second man, Phillip Johnson, who were both situated on the front porch. Johnson consented to a pat-down search, which revealed marijuana and drug paraphernalia. He was arrested and placed in an awaiting police cruiser for the remainder of the encounter.

Meanwhile, the conversation between Kleinholz, who is wheelchair-bound, and the handful of officers continued for between ten and twenty minutes. During this conversation, law enforcement forbade Kleinholz to enter his home without an accompanying officer. Further, officers communicated their concern that the house contained a methamphetamine lab, which was the subject of the anonymous tip and the source of the chemical smell. Kleinholz suggested the odor was a result of his home's plumbing failure or perhaps his oven-roasting rib dinner.

The officers were not convinced and asked two or three times to enter and search the home. Consent was withheld until law enforcement threatened to leave

and return with a search warrant, and until Kleinholz became concerned about burning his dinner and sought to check it. Relenting, Kleinholz said "come on in, I'll show you the leak."

Two officers entered the house with Kleinholz. All three moved toward the kitchen, which was in the back of the house on the first floor. As they moved by the front bedroom, however, the first officer signaled the second officer to look into the room for the methamphetamine lab. The first officer and Kleinholz arrived at the kitchen and inspected the ribs and the faulty plumbing: neither was the source of the chemical smell, which had grown stronger with entry into the house. Meanwhile, the second officer opened the partially-ajar front bedroom door, shined a flashlight into it, thereby discovering the illegal lab. The officer signaled the first officer as to the discovery, and all three individuals left the house.

Upon leaving the house, where they had stayed only a minute or so, officers explained they feared the lab would explode if the heat sources within the house were not shut off. Kleinholz consented to the reentry of law enforcement for this purpose. Next a written consent form was given to and signed by Kleinholz, consenting to a further search of his house. Two officers entered, confirmed the earlier observation, and returned to the porch. He was arrested and later confessed to operating a methamphetamine lab. A team of specialists were called to the scene to dismantle the lab.

Kleinholz was indicted for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841 and 846. He moved to suppress evidence obtained during and as a result of the initial search. The district court (adopting the report and recommendation of a magistrate judge) concluded Kleinholz consented to the search and even had he not, exigent circumstances justified the initial house entry without a warrant. Ultimately, Kleinholz pleaded guilty to the charge, but reserved his right

to appeal the district court's denial of his motion to suppress: he now exercises the right.

II

Kleinholz argues his consent to the initial entry of his home was coerced, but ultimate resolution of that issue is unnecessary. Whatever might be thought about Kleinholz's consent, exigent circumstances together with probable cause justified the entry and search.

Despite the protections of the Fourth Amendment, and the preference for search warrants, a search without a warrant is legal when "justified by both probable cause and exigent circumstances." United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002) (internal citation and quotation omitted). In certain narrow situations, therefore, exigency may be substituted for a warrant, but probable cause must be present before either a warrant or exigency will allow a search.

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). In the present case, several factors suggest the existence of probable cause. Law enforcement had received information from an anonymous informant indicating an illegal methamphetamine lab was in the front bedroom of a house in the area of and similar to Kleinholz's. United States v. Briley, 726 F.2d 1301, 1306 (8th Cir. 1984) ("An anonymous tip from an informer may serve as a basis for probable cause as long as its reliability is established through corroboration."). Additionally, though neither party or the court below seems to find the fact relevant law enforcement had just arrested Kleinholz's companion on Kleinholz's front porch for possession of marijuana and other drug paraphernalia. Most importantly, however, law enforcement smelled ether: a substance known to be used in the

manufacture of methamphetamine. United States v. Francis, 327 F.3d 729, 736 (8th Cir. 2003). The smell of ether might alone support a finding of probable cause. See United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000) (holding officer "developed probable cause for a search based on his immediate perception of an odor associated with methamphetamine production."). But certainly such an odor coupled with other facts support a finding of probable cause. United States v. Ryan, 293 F.3d 1059, 1062 (8th Cir. 2002) (reasoning the odor of ether, coupled with a report drugs were in the house, an officer's knowledge that the odor of ether is given off in the manufacture of methamphetamine, and the defendant's history of drug convictions, combined to create probable cause); United States v. Caves, 890 F.2d 87, 90-91 (8th Cir. 1989) ("odor of an illegal drug can be highly probative in establishing probable cause for a search."). The facts of the present case taken together indicate probable cause existed to believe Kleinholz's front bedroom contained a methamphetamine lab.

Due to the volatile nature of such labs, exigent circumstances justified an immediate but limited search. Walsh, 299 F.3d at 734 ("The potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an on-going methamphetamine manufacturing operation.") (collecting and then following authority from other circuits). In Walsh, this court upheld a limited search without a warrant where law enforcement had probable cause to believe it had discovered a methamphetamine lab. In Walsh, like in this case, law enforcement smelled ether. Id. The detection of this odor along with seeing "various pieces of equipment associated with methamphetamine production outside of a shed" led officers to conduct a brief warrantless search of the shed, which we upheld. Id.

In the case at bar, law enforcement entered Kleinholz's house to confirm their suspicion a methamphetamine lab was being operated and to reduce the immediate risks of fire and explosion posed by such a lab. Upon confirming the presence of the

lab, law enforcement was further justified in reentering the house to make the lab safe. Thus the initial entries, though without benefit of a warrant, were not unconstitutional, and did not, therefore, taint the written consent later obtained from Kleinholz. Besides, once law enforcement had entered the house legally, pursuant to probable cause and exigent circumstances, they were not required to ignore the illegal drug operation; rather, they were free to take note of and even seize anything in "plain view." United States v. Collins, 321 F.3d 691, 694 (8th Cir. 2003) ("Under the plain view doctrine, police may seize an object without a warrant if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself.") (internal quotation marks and citations omitted).

III

Accordingly, regardless of whether Kleinholz's consent was voluntary, probable cause and exigent circumstances combined here to support the limited initial search executed by law enforcement. Therefore, we affirm the decision below.

BYE, Circuit Judge, Concurring.

While joining in the per curiam opinion, I write separately to express my frustration with how law enforcement obtained Kleinholz's consent and how the court below sanctioned such troubling conduct.

Whether Kleinholz voluntarily gave consent to the initial entry of his home is a question of fact. United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001). This court will review the district court's conclusions on such questions for clear error only. Id. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

-6-

conviction that a mistake has been committed." <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948).

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, <u>United States v. Ameling</u>, 328 F.3d 443, 447 (8th Cir. 2003), establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures. U.S. CONST. amend. IV. This means, generally, to search a private place, person, or effect, law enforcement must receive a warrant supported by probable cause from a judicial officer. <u>E.g.</u>, <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.") (emphasis in original) (footnotes omitted). Where one voluntarily consents to a search, however, law enforcement needs neither warrant nor probable cause to legally execute the search. <u>United States v. Matlock</u>, 415 U.S. 164, 165-66 (1974); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 222 (1973).

It is undisputed Kleinholz consented to the entries into his house, but Kleinholz contends his consent was not voluntary. Where a citizen later claims he or she did not voluntarily consent to a search revealing evidence of criminal activity, the government must show by a preponderance of the evidence, under the totality of the circumstances, the defendant did voluntarily consent to the search to allow the challenged evidence to survive a suppression motion. <u>E.g.</u>, <u>United States v. Severe</u>, 29 F.3d 444, 446 (8th Cir. 1994). Consent is voluntary if it was "the product of an essentially free and unconstrained choice by its maker," <u>Bustamonte</u>, 412 U.S. at 225, and not "the product of duress or coercion, express or implied." <u>Id.</u> at 227; <u>see also</u>, <u>Florida v. Bostick</u>, 501 U.S. 429, 434-35, (1991) ("We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; and request consent to search his or her luggage -- as

long as the police do not convey a message that compliance with their requests is required."). We have posed the relevant inquiry as: "whether the officers did anything to affirmatively communicate to the defendant that [he or she] was not free to terminate the encounter or to refuse the consent request." United States v. Zamoran-Coronel, 231 F.3d 466, 469 (8th Cir. 2000).

Some of the circumstances to be considered were outlined in United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990); see also United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001) (applying the Chaidez factors). Individual characteristics are relevant to the issue of the voluntariness of one's consent, including (1) age; (2) general intelligence and education; (3) whether the individual was under the influence of drugs or alcohol; (4) whether he or she was informed of the Miranda [2] rights; and (5) whether he or she had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals. Smith, 260 F.3d at 924.

The environment in which the alleged consent was secured is also important; specifically (1) the length of time one was detained; (2) whether the police threatened, physically intimidated, or punished the suspect; (3) whether the police made promises or misrepresentations; (4) whether the suspect was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether the suspect stood by silently as the search occurred. Id. "The factors should not be applied mechanically, and no single factor is dispositive or controlling." United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000) (internal citation omitted).

After applying the Chaidez factors, the magistrate judge concluded Kleinholz had voluntarily consented. On appeal Kleinholz draws attention to two facts he contends illustrate the coercive nature of the encounter and that were undervalued,

---

[2]Miranda v. Arizona, 384 U.S. 436, 473 (1966).

ignored, or misunderstood by the court below. First, his physical condition compared to that of the handful of officers questioning him: Kleinholz is unable to walk. Second, and more importantly, his inability to break off the encounter and return to his house and his Thanksgiving dinner preparation.

It is undisputed law enforcement told Kleinholz he would not be allowed to reenter his house to check on his dinner or to enter for any other reason without a law enforcement escort. Thus, by allowing law enforcement into his house, he was not voluntarily consenting to a search; rather, he was merely acquiescing to a claim of lawful authority. See Bumper v. North Carolina, 391 U.S. 543, 550, (1968) ("Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an understanding, intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution.") (internal quotation and citation omitted).

It is inconceivable how the magistrate judge could find law enforcement did nothing to affirmatively communicate to Kleinholz he was not "free to terminate the encounter or to refuse the consent request" when they explicitly told him he would not be allowed to reenter his home without allowing law enforcement to follow. Zamoran-Coronel, 231 F.3d at 469.

I, therefore, disagree with the district court regarding the voluntary nature of Kleinholz's consent: more is required of law enforcement. Nonetheless, because I agree, probable cause and exigent circumstances combine here to support the limited initial search executed by law enforcement, I concur.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.