# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2778

_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *    Appeal from the United States
      v.                                     *    District Court for the
                                             *    Eastern District of Missouri.
Pamela Clarke,                               *
                                             *
            Appellant.                       *

_____

Submitted: February 10, 2009
Filed: May 8, 2009

_____

Before RILEY, SMITH, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

A federal grand jury indicted Pamela Clarke (Clarke) on five federal drug charges related to manufacturing and distribution of methamphetamine. Before trial, the district court[1] denied Clarke's motion to suppress evidence obtained during police searches of Clarke's residence. At trial, the district court allowed the government to cross examine Clarke regarding Clarke's methamphetamine use and pseudoephedrine

_____

[1]The Honorable Stephen N. Limbaugh, Sr., United States District Judge for the Eastern District of Missouri, now retired, adopting the report and recommendations of the Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

purchases, and denied Clarke's motion for judgment of acquittal. A jury found Clarke guilty on four of the five charges. At sentencing, the district court overruled Clarke's objection to the amount of methamphetamine involved in the crimes, and sentenced Clarke to 63 months imprisonment. Clarke now challenges the district court's rulings and her sentence. We affirm.

## I.     BACKGROUND

On August 23, 2005, Officer Timothy Groat (Officer Groat) of the Jefferson County, Missouri, Sheriff's Office received an anonymous tip that methamphetamine was being manufactured at Clarke's home. Officer Groat responded to the tip with several other officers, and upon arrival, the officers smelled a chemical odor around the home which they recognized as consistent with methamphetamine manufacturing. The officers attempted to reach someone in the house by knocking on the door and calling the telephone number listed for the address. After no response, the officers decided to enter the home to ensure the safety of anyone possibly inside. The officers donned air purifying respirators as a precaution to possible methamphetamine manufacturing fumes, and forcibly entered the home.

When the officers entered Clarke's home, they saw Clarke lying on the floor. The officers removed Clarke from the home to ensure Clarke's safety. The officers called the fire department and searched the residence looking for other people inside the home. The fire department responded and ventilated the home. Clarke then gave Officer Groat oral and written consent to search the home. The officers' search of Clarke's residence and a nearby shed revealed items typically used to manufacture methamphetamine, including pseudoephedrine pills. The officers arrested Clarke, and after being Mirandized,[2] Clarke stated the officers should only find pill binder in her home. Clarke also disclosed she received some pills from a man named Clark and had broken the pills down the day before.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

-2-

On September 7, 2006, Officer Groat again received information of methamphetamine manufacturing at Clarke's home. Officer Groat responded with several officers, knocked on Clarke's door, and identified himself as with the Sheriff's Office. Clarke answered, opened the door, and gave Officer Groat consent to search the premises. After two other people exited the house, the officers searched Clarke's home and found several items associated with methamphetamine manufacturing. The officers' search of the shed next to Clarke's home revealed a mason jar containing a biphase liquid consistent with methamphetamine production. Officer Groat took three samples of the biphase liquid. Clarke was arrested and Mirandized. Clarke told Officer Groat the biphase liquid belonged to her neighbor, who cooked methamphetamine. The samples subsequently tested positive for containing methamphetamine.

A federal grand jury indicted Clarke on five counts, including: (1) conspiracy to possess pseudoephedrine knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c) and 846; (2) possession of pseudoephedrine knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c); (3) conspiracy to manufacture fifty or more grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B)(viii), and 846; (4) possession with intent to distribute fifty or more grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) and 18 U.S.C. § 2; and (5) maintaining a drug involved premises, in violation of 21 U.S.C. § 856(a)(2).

Before trial, Clarke moved to suppress (1) the evidence obtained during the two searches of Clarke's home, and (2) Clarke's statements to Officer Groat. The district court referred the motion to the magistrate who issued a report and recommendation to deny Clarke's motion. The magistrate found probable cause and exigent circumstances allowed the officers to make the initial warrantless entry of Clarke's home on August 23, 2005, and Clarke gave valid consent to the searches on August

-3-

23, 2005, and September 7, 2006. The magistrate also found Clarke's statements were admissible because Clarke voluntarily waived her Miranda rights, and the officers had probable cause to arrest Clarke on both occasions. The district court adopted the magistrate's report and recommendations and denied Clarke's motion to suppress.

Clarke's trial began on May 12, 2008. During the government's case-in-chief, the parties jointly stipulated the three samples of biphase liquid seized by Officer Groat on September 7, 2006, weighed a total of 62.46 grams and contained methamphetamine. At the close of the government's evidence, Clarke made a general motion, without argument, for judgment of acquittal.[3] The district court denied the motion, stating there was sufficient evidence to submit all five counts to the jury. Clarke then presented her evidence and testified. During the government's cross examination of Clarke, the government questioned Clarke about Clarke's prior methamphetamine use, Clarke testing positive for methamphetamine on two separate occasions after her arrest and before trial, and Clarke's pseudoephedrine purchases after the September 7, 2006 search of Clarke's home. Clarke's counsel objected to the questioning on Clarke's prior methamphetamine use and Clarke's pseudoephedrine purchases. The district court overruled the objections. At the close of evidence, Clarke renewed, without argument, her motion for judgment of acquittal. The district court again denied the motion. The jury acquitted Clarke on count one of the indictment, but found Clarke guilty on counts two, three, four, and five.

After the jury verdict, a presentence investigation report (PSR), prepared for Clarke, calculated an advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range of 63 to 78 months imprisonment. In the PSR, the 62.46 grams of biphase liquid containing methamphetamine stipulated to at trial was used to calculate an offense level of 26 for Clarke. Clarke's counsel objected to using the full amount

---

[3]Clarke specifically moved "as a matter of law that the case is insufficient to submit to the jury." The district court converted the motion to one for judgment of acquittal.

of the biphase liquid to determine Clarke's offense level, arguing the biphase liquid was waste water which could not be counted as a "mixture or substance" under 18 U.S.C. § 841(b) or U.S.S.G. § 2D1.1. The district court overruled Clarke's objection, adopted the PSR calculation for Clarke's advisory Guidelines range, and sentenced Clarke to the bottom of the range, 63 months imprisonment. This appeal follows.

## II.   DISCUSSION
### A.   Motion for Judgment of Acquittal

Clarke first argues the district court erred in denying her motion for judgment of acquittal because the government did not prove Clarke "possessed more than 50 grams of a mixture [or] substance containing methamphetamine." In support of her argument, Clarke urges us to adopt a "market approach" used by some other Circuit Courts of Appeals which only attributes to the defendant the "usable or ingestible" methamphetamine contained in a mixture or substance, rather than the entire amount of any liquid containing methamphetamine. Clarke contends there was insufficient evidence to submit counts three and four to the jury because the biphase liquid was waste water which was not usable, marketable, or traffickable, and the government failed to prove the actual amount of methamphetamine in the biphase liquid.[4]

We review de novo a district court's denial of a motion for judgment of acquittal. United States v. Reddest, 512 F.3d 1067, 1069-70 (8th Cir. 2008). We "view the evidence in the light most favorable to the Government" and determine "whether the evidence is sufficient to permit a reasonable jury to conclude that the

_____

[4]Although Clarke does not specifically state in her brief which counts she believes had insufficient evidence for conviction, we assume Clarke is only challenging the district court's denial of her motion for judgment of acquittal on counts three and four because these are the only counts which required the government to prove the existence of fifty or more grams of a mixture or substance containing a detectable amount of methamphetamine.

defendant is guilty beyond a reasonable doubt."[5]  Id. at 1070.  Clarke failed to argue at trial that only the "usable or ingestible" amount of methamphetamine in the biphase liquid could be used to prove the weight of the methamphetamine.  "'An argument not raised below cannot be raised on appeal for the first time unless the obvious result would be a plain miscarriage of justice.'"  United States v. Rees, 447 F.3d 1128, 1130 (8th Cir. 2006) (quoting United States v. Gutierrez, 130 F.3d 330, 332 (8th Cir. 1997).

Under 21 U.S.C. § 841(a)(1), a person cannot "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  Any defendant convicted under § 841(a)(1) is subject to a mandatory minimum five-year prison sentence under 21 U.S.C. § 841(b)(1)(B)(viii) if the crime involved "50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."

In United States v. Kuenstler, 325 F.3d 1015, 1023 (8th Cir. 2003), this court discussed whether "the § 841(b)(1)(B) phrase 'mixture or substance containing a detectable amount of methamphetamine' only applies to usable or marketable mixtures or substances."  Relying on the reasoning of Chapman v. United States, 500 U.S. 453, 461 (1991), which held blotter paper customarily used to distribute LSD was a "'mixture or substance containing a detectable amount' of LSD" under § 841(b)(1)(B), our court concluded solutions containing both solid methamphetamine and toxic liquid "fall within the scope of § 841(b)(1)(B)," and the total weight of the solution is attributed to the defendant.  Kuenstler, 325 F.3d at 1023.  A panel of this court recently reaffirmed the holding of Kuenstler, stating "the total weight of the solution, not just the weight of the solid methamphetamine, should be counted under § 841" in spite of decisions "from other circuits which limit the relevant weight to the actual methamphetamine."  United States v. Gentry, 555 F.3d 659, 665, 666 (8th Cir.

[5]Clarke frames our inquiry as a question of sufficiency of the evidence.  There is no distinction between our review of the sufficiency of the evidence and the denial of a motion for judgment of acquittal.  See Reddest, 512 F.3d at 1069-70.

2009). We are bound by <u>Kuenstler</u> and <u>Gentry</u>. <u>See</u> <u>United States v. Jackson</u>, 554 F.3d 716, 717 (8th Cir. 2009) ("'a panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc'" (quoting <u>United States v. Wright</u>, 22 F.3d 787, 788 (8th Cir. 1994))).

The district court did not commit a "plain miscarriage of justice" in denying Clarke's motion for judgment of acquittal. Clarke stipulated that the biphase liquid collected by Officer Groat weighed over fifty grams, specifically 62.46 grams, and contained methamphetamine. The government's expert witness also testified that liquids like the biphase liquid found at Clarke's house can be converted to usable form, and are commonly trafficked or stored for future use in methamphetamine manufacturing. Based on these facts, the entire weight of the biphase liquid justly is attributed to Clarke, and the evidence was sufficient for a reasonable jury to conclude Clarke possessed "50 grams or more of a mixture or substance containing a detectable amount of methamphetamine." <u>See</u> 21 U.S.C. § 841(b)(1)(B)(viii).

### B.    Objection at Sentencing

Clarke also argues the district court erred in overruling her objection to using the full amount of the biphase liquid to determine her sentence. Relying on her argument that only the "usable or ingestible" methamphetamine in the biphase liquid could be attributed to her, Clarke maintains the district court improperly used the full amount of the biphase liquid to apply the five year mandatory minimum of 21 U.S.C. § 841(b)(1)(B) and to calculate Clarke's base offense level for Clarke's advisory Guidelines range.

"We review a district court's interpretation of a sentence-enhancement statute de novo." <u>United States v. Speakman</u>, 330 F.3d 1080, 1081 (8th Cir. 2003). "Before imposing a sentence, the district court must begin by correctly calculating the applicable advisory Guidelines range." <u>United States v. Viezcas-Soto</u>, __ F.3d, __, No. 08-2339, 2009 WL 961277, at *1 (8th Cir. Apr. 10, 2009) (citation omitted). We

review a district court's application of the Guidelines de novo, <u>United States v. Blankenship</u>, 552 F.3d 703, 704 (8th Cir. 2009), and "a sentencing court's finding of fact regarding the quantity of drugs for clear error." <u>United States v. Palega</u>, 556 F.3d 709, 716 (8th Cir. 2009) (citing <u>United States v. Atkins</u>, 250 F.3d 1203, 1211 (8th Cir. 2001)).

The district court provided two reasons for overruling Clarke's objection to using the full amount of the biphase liquid to determine Clarke's sentence. The district court first noted the jury was instructed, in order to find Clarke guilty on counts three and four, the jury must find the counts involved fifty or more grams of a mixture or substance containing methamphetamine. Because the jury found Clarke guilty on these counts, the district court declined to speculate on, or second guess, the jury's findings, and opined it was not Congress's intent to have the district court make an independent finding at sentencing regarding the amount of pure methamphetamine in a mixture or substance. Second, the district court followed this court's decision in <u>Kuenstler</u> instead of decisions from other Circuit Courts of Appeals cited by Clarke.

The district court did not commit error in finding the five-year mandatory minimum sentence applied to Clarke because the entire weight of the biphase liquid was properly attributed to Clarke under 21 U.S.C. § 841(b)(1)(B). <u>See</u> <u>Gentry</u>, 555 F.3d at 666; <u>Kuenstler</u>, 325 F.3d at 1023.

The district court also did not err in applying the entire weight of the biphase liquid to determine Clarke's advisory Guidelines range. Under U.S.S.G. § 2D.1.1(c)(7), a base offense level of 26 is assigned to a drug crime involving between fifty and two hundred grams of methamphetamine. Note B to U.S.S.G. § 2D1.1(c) states, "In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance." Application Note 1 to U.S.S.G. § 2D1.1 declares a mixture or substance "has the same meaning as in 21 U.S.C. § 841," but "does not include

materials that must be separated from the controlled substance before the controlled substance can be used . . . [such as] waste water from an illicit laboratory used to manufacture a controlled substance."[6]

Although <u>Kuenstler</u> and <u>Gentry</u> control the amount of the biphase liquid attributed to Clarke under 21 U.S.C. § 841, these cases did not address the definition of "mixture or substance" under U.S.S.G. § 2D1.1 as applied to mixtures or substances containing methamphetamine, nor has another decision of this court addressed the issue. <u>See</u> <u>Gentry</u>, 555 F.3d at 665-66; <u>Kuenstler</u>, 325 F.3d at 1019. We, however, need not reach the issue in this case because the record before us reveals there was a preponderance of the evidence that the biphase liquid was not "waste water" which should be excluded under the Guidelines. <u>See</u> <u>United States v. Berger</u>, 553 F.3d 1107, 1109 (8th Cir. 2009) ("This court may affirm the judgment of the district court on any basis supported by the record"); <u>Atkins</u>, 250 F.3d at 1211 (stating, at sentencing,"the government must prove the quantity of drugs attributed to a defendant by a preponderance of the evidence"). Clarke stipulated at trial that the biphase liquid weighed over fifty grams and contained methamphetamine, and the government's expert testified at trial that the biphase liquid could be usable, traffickable, or stored for future methamphetamine manufacturing. In contrast, Clarke submitted no evidence that the biphase liquid was "waste water." Therefore, the district court did not clearly err in using the entire amount of the biphase liquid to calculate Clarke's base offense level under U.S.S.G. § 2D1.1.

## C.   Cross Examination of Clarke

Clarke next asserts the district court erred when the district court allowed the government to cross examine Clarke regarding her pseudoephedrine purchases and

---

[6]In the district court, Clarke mentioned Application Note 1 to U.S.S.G. § 2D1.1 in her objections to the PSR, but neither party addresses in their appeal briefs the possible link between <u>Kuenstler</u> and <u>Gentry</u> and Application Note 1. We choose to raise and discuss the issue only briefly.

positive drug tests. Clarke maintains the evidence was improper under Fed. R. Evid. 404(b) because (1) the government failed to give notice of its intent to rely on this evidence; (2) the evidence only showed Clarke's propensity to use and manufacture methamphetamine; (3) the evidence lacked reliability; and (4) the district court gave no limiting instruction.

We review a district court's evidentiary rulings under Fed. R. Evid. 404(b) for abuse of discretion. See United States v. Hawkins, 548 F.3d 1143, 1146 (8th Cir. 2008). "We construe Rule 404(b) broadly as a rule of inclusion, 'and we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" Id. (quoting United States v. Anthony, 537 F.3d 863, 865 (8th Cir. 2008)).

Clarke did not argue to the district court that evidence of Clarke's pseudoephedrine purchases was improper under Rule 404(b), and although Clarke objected to a question by the government on her prior methamphetamine use, Clarke did not object to the government's questions regarding Clarke's positive drug tests. Thus, we review these rulings for plain error, which requires Clarke "to prove that there was (1) error, (2) that was plain, and (3) that affected substantial rights." United States v. Eagle, 515 F.3d 794, 801 (8th Cir. 2008) (citations omitted). Reversal under plain error review is only warranted if "'the error has prejudiced the substantial rights of a party and would result in a miscarriage of justice if left uncorrected.'" United States v. Porchay, 533 F.3d 704, 708 (8th Cir. 2008) (quoting Olson v. Ford Motor Co., 481 F.3d 619, 627 (8th Cir. 2007)).

Fed. R. Evid. 404(b) excludes evidence of "crimes, wrongs, or acts" which are offered to show a defendant's propensity, or character, to commit a crime, but does not exclude the evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In criminal cases, Rule 404(b) requires the prosecution to give pretrial notice, unless the

district court excuses the notice at trial, regarding the "general nature" of any Rule 404(b) evidence the government "intends to introduce at trial."

The district court found the government's questioning on Clarke's pseudoephedrine purchases was admissible as both impeachment evidence and proof of the charged conspiracy in count one of the indictment. This was not error. We have consistently held "'crimes or acts which are "inextricably intertwined" with the charged crime are not extrinsic and Rule 404(b) does not apply.'" United States v. Aldridge, 561 F.3d 759, 766 (8th Cir. 2009) (quoting United States v. Adams, 401 F.3d 886, 899 (8th Cir. 2005)). Count one of the indictment charged Clarke with conspiracy to possess pseudoephedrine between August 23, 2005, and October 3, 2007, knowing the pseudoephedrine would be used to manufacture methamphetamine. The government questioned Clarke about her pseudoephedrine purchases from September 12, 2006, through March 18, 2007. The government's questioning provided direct evidence of Clarke's possession of pseudoephedrine during the alleged conspiracy of count one, and was clearly relevant to establishing Clarke's participation in the conspiracy. Thus, the evidence was outside the province of Rule 404(b), because it was "inextricably intertwined" with the charged conspiracy, and the district court did not commit any error, much less plain error, in allowing the government to inquire about these purchases during Clarke's cross examination. See United States v. O'Dell, 204 F.3d 829, 833-34 (8th Cir. 2000) (holding testimony about a defendant's possession of methamphetamine was "inextricably intertwined" with the charged conspiracy to distribute methamphetamine).

The district court also did not commit error under Rule 404(b) by allowing the government to cross examine Clarke regarding her positive methamphetamine tests because the questions were not subject to Rule 404(b), but rather, were offered to impeach, under Fed. R. Evid. 608(b), Clarke's testimony denying methamphetamine manufacturing, possession, and use. Under Fed. R. Evid. 608(b), a witness may be cross examined regarding specific incidents and actions which attack or support the

witness's character for truthfulness, but these acts cannot be proved by extrinsic evidence.

During direct examination, Clarke testified she did not recognize some of the items seized at her house which had been identified by the government as commonly used for methamphetamine manufacturing. Clarke also testified, during 2005 and 2006, she did not engage in methamphetamine manufacturing, breaking down of pills, mixing combustible substances, or possessing diet pills and cold pills to manufacture methamphetamine. On cross examination, Clarke testified she previously had used methamphetamine, but did not use methamphetamine in 2005 and 2006. Clarke also testified she inadvertently took diet pills, after she was indicted, which had been laced with methamphetamine. Because Clarke denied any connection to methamphetamine manufacturing, possession, or use, the government could attempt to impeach Clarke with questions regarding Clarke's positive methamphetamine tests. The positive tests contradicted Clarke's denials about methamphetamine possession and use and attacked Clarke's truthfulness, and the government did not offer extrinsic evidence of the positive tests. Thus, the evidence was proper under Rule 608(b), and the district court did not commit any error.

Lastly, because Rule 404(b) evidence was not involved, a limiting instruction was not necessary.

### D. Denial of Motion to Suppress

Clarke finally contends the district court erred in denying her motion to suppress the evidence obtained during the August 23, 2005 search of Clarke's home.[7] Clarke argues the warrantless search was unlawful because the search did not fall

[7]Clarke has not appealed the district court's findings regarding Clarke's consent after the initial entry on August 23, 2005, and has also not appealed the district court's denial of Clarke's motion to suppress the evidence obtained during the September 7, 2006 search.

within the exigent circumstances exception to the warrant requirement. Clarke asserts the general anonymous tip regarding methamphetamine manufacturing and the general smell of an odor associated with methamphetamine manufacturing did not create an exigent circumstance which authorized the officers to make a warrantless entry into Clarke's home. Clarke maintains, because exigent circumstances did not exist for the initial entry into Clarke's home, Clarke's consent to the subsequent search and the evidence obtained during the search were tainted, and should have been excluded.

We review "'the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo.'" United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (quoting United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006)). "We 'must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.'" United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008) (quoting United States v. Varner, 481 F.3d 569, 571 (8th Cir. 2007)).

The Fourth Amendment prohibits a warrantless entry of a home by law enforcement officers unless the circumstances are within a reasonableness exception to the warrant requirement. Castellanos, 578 F.3d at 969. We have recognized a reasonableness exception to the warrant requirement which allows a non-consensual, warrantless search of a home if the search is supported by probable cause and exigent circumstances. See Hogan, 539 F.3d at 922. Under the exigent circumstances exception, police may take immediate action "if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." Id. (citations omitted). "In certain narrow situations, therefore, exigency may be substituted for a warrant, but probable cause must be present before either a warrant or exigency will allow a search." Kleinholz v. United States, 339 F.3d 674, 676 (8th Cir. 2003) (per curiam). Probable cause is established "'when, given the totality of the circumstances, a

reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place.'" Id. (quoting United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000)).

In this case, the officers had probable cause to believe methamphetamine was being manufactured in Clarke's home. The officers received an anonymous tip that methamphetamine manufacturing was occurring. Upon arrival, Officer Groat smelled an odor which, based on his training and extensive experience, he recognized as consistent with methamphetamine manufacturing. These facts support a determination of probable cause. See Kleinholz, 339 F.3d at 677 (stating, an officer smelling an odor of a substance commonly used in methamphetamine manufacturing "might alone support a finding of probable cause," and "certainly such an odor coupled with other facts[, including an anonymous tip,] support a finding of probable cause").

Exigent circumstances also existed. Because the officers had probable cause to believe methamphetamine was being produced in Clarke's home, the officers reasonably concluded there was a potential threat to the safety of the officers, anybody inside the home, and anyone in the surrounding area. See United States v. Walsh, 299 F.3d 729, 734 (8th Cir. 2002) (declaring, "[o]ur court has consistently considered safety factors in determining whether exigent circumstances existed," and "[t]he potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an on-going methamphetamine manufacturing operation"). The officers' concern for the safety of everyone involved in the situation was reasonably heightened after the officers were unable to contact anyone inside the home after knocking and calling the listed telephone number. See id. (holding exigent circumstances existed when there was an odor of ether, possible equipment for methamphetamine manufacturing, and the officers could not determine whether anyone was hiding or lying unconscious, or whether there was a dangerous heat source, in the suspected methamphetamine lab). We therefore conclude the

-14-

district court did not commit error in denying Clarke's motion to suppress because the warrantless entry of Clarke's home on August 23, 2005, was justified by probable cause and exigent circumstances.

## III.    CONCLUSION

We affirm Clarke's sentence and the district court's judgment.

_____