[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14664

_____

D.C. Docket No. 2:09-cr-00077-JES-SPC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERMAN TORRES,
a.k.a. Punti,
a.k.a. Punt,
a.k.a. El Indio,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 9, 2013)

Before DUBINA, JORDAN and BALDOCK,[*] Circuit Judges.

_____

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

BALDOCK, Circuit Judge:

A jury convicted Defendant Herman Torres of one count of conspiracy to manufacture or possess marijuana with intent to distribute and two counts of manufacturing or possessing marijuana with intent to distribute. Defendant now appeals his conviction on all three counts, as well as his sentence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

I.

In 2002, Defendant joined a marijuana growing operation in southern Florida headed by Jose Diaz. He agreed to work as caretaker for a grow house on 20th Avenue in Collier County in exchange for 30 percent of the income from each harvest. Defendant recruited Manuel Torres (his brother) and Roberto Pineda to help harvest marijuana. Defendant acted as caretaker at this house for less than a year, completing only two marijuana harvests, before he brought in a friend to tend the house. In 2004, Defendant recruited his sister, Veronica Torres, to purchase a house on Everglades Boulevard for use as a grow house. He supplied the $17,000 down payment and paid his sister between $2,000 and $4,000 per harvest. Defendant's brother Manuel Torres acted as caretaker at the Everglades Boulevard house for about a year and a half, through five or six marijuana harvests that each yielded about 200 plants. Defendant oversaw the operation and paid his

2

brother for each crop.  After Manuel Torres left, Defendant hired two more successive caretakers for another seven to nine crops.  The organization stopped using the Everglades Boulevard house in late 2006 or early 2007 because they suspected surveillance, but they resumed cultivation there in early 2008.  Defendant supervised the house through another five harvests.  Defendant sometimes supplied chemicals and plant food to another of Diaz's grow houses, which was supervised by Carlos Graham.  Defendant frequently visited Graham, sometimes in company with Diaz.  Defendant also supervised a grow house on Van Camp Street in North Port for a short time.  In late 2008 or early 2009, Defendant turned a house his wife had purchased on 8th Avenue into a grow house.  Manuel Torres served as caretaker there.

As it turned out, local authorities and the Drug Enforcement Administration (DEA) were aware of the organization.  The DEA obtained court authorization to tap Diaz's telephone and recorded multiple conversations he had with Defendant.  Police arrested Manuel Torres at the 8th Avenue house in April 2009 and found 162 marijuana plants.  Authorities arrested Defendant in September 2009.  Diaz testified that Defendant had participated in a total of 25 to 30 marijuana harvests during his association with Diaz's organization.

A grand jury indicted Defendant with the following: (1) conspiracy to manufacture or possess with intent to distribute 1,000 or more marijuana plants and to distribute 100 or more kilograms of marijuana between 2002 and 2009, (2) manufacturing and possessing with intent to distribute 100 or more marijuana plants on April 29, 2009, and (3) manufacturing and possessing with intent to distribute 100 or more marijuana plants on September 29, 2009.  The superseding indictment also sought forfeiture of proceeds from the marijuana trafficking.

Defendant and four of his co-defendants went to trial.  During the course of the trial, the district court made several evidentiary rulings that Defendant now challenges.  First, the district court sustained the Government's objection when Defendant's counsel asked a DEA agent whether Veronica Torres had "lied" to him in an investigative interview.  Second, the court allowed the agent to testify that he would "assum[e]" any money passing between Defendant and his co-defendant Roberto Pineda was drug money.  Doc. 446 at 169.[1]  Third, the court allowed a sheriff's detective to testify regarding the maturity of marijuana plants.  Fourth, the court allowed Carlos Graham to estimate how many plants were

_____

[1] Defendant appealed along with three of his co-defendants, with each defendant filing a separate record on appeal in their corresponding case numbers.  Only one of the co-defendants, however, included the trial transcripts from their joint trial.  This creates some confusion in the page numbering.  Accordingly, when we cite the trial transcripts in this case, we will cite the district court docket.  See Fed. R. App. P. 10(a)(2).  When we cite the "Record," we mean the four-volume record filed in this case, appellate number 10-14664.

harvested at one house, even though he could "[n]ot exactly" recall the number. Doc. 449 at 104. Finally, when the Government introduced recordings of Diaz's telephone conversations, the court allowed the jury to view English-language transcripts of the conversations. The court overruled Defendant's objection that the transcripts were improperly authenticated.

Defendant's counsel moved for judgment of acquittal on the basis that "the Government has failed to prove a prima facie case against [Defendant] at this time." Doc. 455 at 7, 75. The district court denied this motion, and the jury convicted Defendant on all three counts. Defendant's guideline range under the United States Sentencing Guidelines was initially 97–121 months. But the conspiracy count carried a mandatory minimum of ten years. See 21 U.S.C. § 841 (b)(1)(A)(vii). So the court sentenced Defendant to concurrent 120-month sentences on each count. The court also entered a joint and several forfeiture judgment against Defendant in the amount of $850,000.

Defendant now appeals, raising four issues. First, he argues the evidence was insufficient to convict him of the charged conspiracy. Second, he argues the district court abused its discretion in making the evidentiary rulings mentioned above. Third, he argues the district court erred in not submitting the forfeiture issue to the jury. Fourth, he argues his sentence was unreasonable.

5

II.

We turn first to Defendant's challenge to the sufficiency of the evidence.[2]

Ordinarily, we review a challenge to the sufficiency of the evidence *de novo*,

viewing the evidence in the light most favorable to the Government.  United States

v. Dominguez, 661 F.3d 1051, 1061 (11th Cir. 2011).  But the Government argues

we may only review Defendant's sufficiency challenge for plain error because his

motion for judgment of acquittal "was not sufficiently specific to preserve for

appeal the particular arguments he asserts in his brief."  Appellee's Br. at 49–50.

The Government is correct that Defendant's motion for judgment of acquittal was

general, rather than specific.  We have, on occasion, reviewed only for plain error

when the defendant "failed to move at trial for a directed verdict of acquittal on

[the specific] basis" raised on appeal.  United States v. Hurn, 368 F.3d 1359, 1368

(11th Cir. 2004).  See also United States v. Hunerlach, 197 F.3d 1059, 1068 (11th

---

[2] Defendant's brief contains a separate argument that the district court erred in denying Defendant's Rule 29 motion.  A Rule 29 motion is by definition a challenge to the sufficiency of the evidence.  Fed. R. Crim. P. 29(a) ("[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").  See also United States v. Jones, 102 F.3d 804, 807 (6th Cir. 1996) ("A Rule 29 motion is a challenge to the sufficiency of the evidence.").  So we will not treat the Rule 29 motion as a separate issue on appeal.

6

Cir. 1999) ("Since the record does not show that Appellant raised this issue to the district court, our review of the district court's decision to deny the motion for judgment of acquittal on that basis is only for 'plain error.'").  In those cases, however, the defendants raised *specific* sufficiency-related arguments in the district court and then raised other specific arguments on appeal.  See Brief of Appellee at *12, United States v. Hurn, 2003 WL 24191431 (11th Cir. 2003); Brief of Appellee at *34–35, United States v. Hunerlach, 1998 WL 34078952 (11th Cir. 1998).  In contrast, Defendant here raised a *general* sufficiency challenge in the district court.

A number of our sister circuits hold that a general sufficiency challenge is adequate to preserve specific sufficiency arguments on appeal, but that a defendant who moves for judgment of acquittal on specific grounds forfeits all other specific grounds on appeal.  See United States v. Cooper, 654 F.3d 1104, 1117 (10th Cir. 2011); United States v. Chance, 306 F.3d 356, 371 (6th Cir. 2002); United States v. Spinner, 152 F.3d 950, 955 (D.C. Cir. 1998); United States v. Hoy, 137 F.3d 726, 729 (2d Cir. 1998).  But see United States v. Clarke, 564 F.3d 949, 953–54 (8th Cir. 2009) (applying plain error review to a specific argument on appeal even when the defendant filed a general motion for judgment of acquittal).  We need not

7

decide the appropriate standard of review, however, because Defendant's claim fails even under *de novo* review.

Defendant's main sufficiency argument is that the evidence did not show he conspired to possess more than 1,000 marijuana plants. But the evidence was more than adequate. Diaz testified that the 20th Avenue house where Defendant acted as caretaker through two harvests had 33 lights, with between three and five plants per light. Even after Defendant brought in another caretaker, he continued "supervising the home," which included bringing in fertilizer and making sure the operation ran smoothly. Doc. 450 at 86. The house operated through six more harvests. So during the eight harvests at the 20th Avenue house, Defendant was responsible for between 792 and 1320 plants. Then, Defendant oversaw the Everglades Boulevard house through a total of 17 to 20 harvests of 200 plants, meaning he oversaw the cultivation of between 3,400 and 4,000 plants there, in addition to the 165 plants seized at the house upon execution of the search warrant. Furthermore, police seized 162 plants from the 8th Avenue house that Defendant oversaw. This evidence amply supported the jury's finding that Defendant conspired to manufacture and possess more than 1,000 marijuana plants.

8

Defendant makes several other frivolous arguments regarding the sufficiency of the evidence.  He argues that the cooperating witnesses were not credible because they received leniency in exchange for their testimony.  He goes so far as to say, "The testimony clearly shows that neither Graham, Lorenzo nor Diaz were telling the truth when it came to anything . . . ."  Appellant's Br. at 44. This brazen assertion is unsupported by the record; Defendant did not present evidence contradicting any of these witnesses' statements.  More importantly, when reviewing the sufficiency of the evidence, we are bound by the jury's credibility determinations unless the testimony is "incredible as a matter of law." United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009) (per curiam) (quoting United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997)). "Testimony is only incredible if it relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." Id. (internal quotation marks omitted) (quoting Calderon, 127 F.3d at 1325).  "The fact that a witness has consistently lied in the past, engaged in various criminal activities, and thought that his testimony would benefit him does not make his testimony incredible."  United States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005) (brackets and ellipsis omitted) (quoting United States v. Cravero, 530 F.2d 666, 670 (5th Cir. 1976)).

9

Defendant also quibbles with the Government's failure to conduct DNA or fingerprint testing on the physical evidence seized at the grow houses. He argues this would have been "better evidence than the testimony of co-conspirators." Appellant's Br. at 47. This misses the point. The law does not care what evidence the Government presents—circumstantial, direct, testimonial, physical, scientific, or anything else admissible—as long as the evidence is sufficient for a reasonable jury to convict the defendant. See United States v. Kendrick, 682 F.3d 974, 984 (11th Cir. 2012) (no distinction between circumstantial and direct testimony); Flores, 572 F.3d at 1262–63 (physical evidence not necessary); United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006) (per curiam) ("[T]he uncorroborated testimony of an accomplice is sufficient to support a conviction if it is not on its face incredible or otherwise insubstantial."). The evidence was sufficient here.

### III.

We next turn to Defendant's evidentiary arguments. We review properly preserved challenges to evidentiary rulings for abuse of discretion. United States v. Gamory, 635 F.3d 480, 492 (11th Cir. 2011). But even if we find error, we will not reverse if the error does not affect the defendant's substantial rights. Id.; Fed. R. Crim. P. 52(a).

A.

Defendant first argues the court should have allowed DEA Agent Goldfinger to answer defense counsel's question, "Isn't it a fact that during the course of that interview, that Veronica Torres initially lied to you about her involvement with the . . . Diaz organization?" Doc. 446 at 159–60. The Government objected to this question as irrelevant and beyond the scope of direct. The district court sustained the objection and struck the question.

On appeal, the Government argues the question was improper, pointing us to our statement in United States v. Schmitz, 634 F.3d 1247, 1269 (11th Cir. 2011), that "were-they-lying questions invade the province of the jury." The Government also cites United States v. Henderson, 409 F.3d 1293, 1299 (11th Cir. 2005), where we said, "The Federal Rules of Evidence preclude a witness from testifying as to the credibility of another witness." These cases, however, are not exactly on point. They both dealt with questioning one witness regarding the veracity of another witness's trial testimony. Veronica Torres testified at Defendant's trial, but defense counsel's question to Agent Goldfinger was not whether Veronica Torres lied *at trial*. Instead, the question was whether she had told one story to Agent Goldfinger but then changed that story, a question that would be relevant to her credibility.

11

Nevertheless, the district court acted within its discretion when it excluded the question as beyond the scope of direct. The Government's direct examination of the DEA agent did not touch on Veronica Torres except when the agent authenticated a picture of her. Furthermore, even if the district court had erred, the error would have been harmless because Veronica Torres herself admitted on cross-examination that she lied to the DEA case agents. See Doc. 449 at 229–30, 233.

## B.

Next, Defendant challenges Agent Goldfinger's statement that he assumed "money coming from [Defendant] to Mr. Pineda" would be drug proceeds. Doc. 446 at 169. The testimony came about in this way. On direct examination, Agent Goldfinger testified that he observed Defendant meet with co-defendant Roberto Pineda in a Walmart parking lot. After Defendant left, Agent Goldfinger observed Pineda go into the store and return with an envelope full of cash. On cross-examination, Pineda's counsel (not Defendant's) asked Agent Goldfinger if he knew that any drug proceeds changed hands that day. Agent Goldfinger responded, "If it was money coming from [Defendant] to Mr. Pineda, that would be my assumption as a trained investigator." Id. Defendant's counsel objected that the question was speculative and moved to strike the answer, but the district

12

court overruled the objection. Pineda's counsel then asked, "Your assumption is not [the] equivalent of evidence; is it, Mr. Golfinger?" Id. at 170. Goldfinger responded that neither Defendant nor Pineda had any employment other than drug trafficking. Pineda's counsel finally got Goldfinger to admit that his "assumptions" were not evidence for the jury to consider, but merely his "opinion." Id.

Defendant claims the district court should have excluded this testimony under Federal Rule of Evidence 403, which allows a court to "exclude relevant evidence if its probative value is substantially outweighed" by the danger of unfair prejudice. But Defendant's counsel only objected on the basis that the question "call[ed] for speculation." Doc. 446 at 169. Because Defendant did not object based on Rule 403, we can only review his Rule 403 argument for plain error. United States v. Tobin, 676 F.3d 1264, 1273 (11th Cir. 2012).

Exclusion of evidence under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." United States v. Lopez, 649 F.3d 1222, 1248 (11th Cir. 2011) (quoting United States v.Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010)). Here, the agent did *not* say any money passed from Defendant to Pineda. He only said that *if* money changed hands between Defendant and Pineda, he

13

would assume it was drug proceeds.  In light of Agent Goldfinger's subsequent

admission that this assumption was not "evidence," this was not reversible error, if

error at all.

C.

Defendant next challenges the testimony of a sheriff's detective who helped

execute the search warrant at the 8th Avenue grow house.  The detective testified

that the 162 plants in the house were about a week away from cutting.  Defense

counsel made a vague objection, saying, "Objection as to what he thinks, Your

Honor."  Doc. 448 at 66.  The district court overruled the objection.

On appeal, Defendant argues the testimony was prejudicial under Rule 403.

But because Defendant did not raise a Rule 403 objection at trial, we can only

review for plain error.  Tobin, 676 F.3d at 1273.  The Government established that

the detective had spent ten years in the narcotics bureau, had participated in over

100 indoor marijuana growing investigations, and was familiar with marijuana

cultivation.  This was a sufficient foundation for him to testify regarding the

plants' maturity.

Even if the court erred in admitting the testimony, the error would be

harmless.  Diaz, who oversaw the entire marijuana-growing operation, testified

that the plants at the "home where Manuel Torres was needed one more week to

14

be harvested." Doc. 451 at 28. Because Diaz provided competent testimony regarding exactly the same fact, we cannot imagine a more harmless error.

### D.

Defendant argues the district court committed reversible error by allowing Carlos Graham to testify regarding his "estimate" that he helped harvest 75 plants at an unspecified grow house. Graham initially said he could "[n]ot exactly" remember the amount of marijuana and could "not really" remember the number of plants. Doc. 449 at 104. The Government then asked if he had "any estimate" regarding the number of plants. Id. Defense counsel objected that this called for speculation, but the district court overruled the objection. Graham answered, "Maybe about 75 plants, something like that." Id. Defendant has cited no authority prohibiting witnesses from estimating numbers when their memory is shaky. So we are not convinced that Graham's answer was impermissible speculation.

### E.

Defendant's final evidentiary argument relates to the English-language transcripts. The Government played recordings of the wiretaps to the jury. Some of the recorded conversations involved Diaz speaking to Defendant. Because most of the conversations were in Spanish, the Government provided the jury with

15

English-language transcripts but did not identify who had prepared the transcripts. Instead, the Government asked Diaz, who was able to read and speak both English and Spanish, whether the translated transcripts were a true and accurate reflection of the recordings. Defendant's counsel said, "I'm going to object to true and accurate. Again, predicate. Again, calls for a conclusion that this witness is not qualified to provide." Doc. 450 at 127. But Defendant did not point out any errors in the transcripts or propose an alternative translation. The district court overruled the objection. On appeal, Defendant argues the transcripts' admission was "prejudicial to the appellant" because "the transcriptions and translations were not verified by the actual person who did said translations and transcriptions." Appellant's Br. at 53. Defendant only argues that the transcripts lacked an adequate foundation; he does not argue they violated the Confrontation Clause.

This circuit has established a procedure for "challenging the accuracy of an English-language transcript of a conversation conducted in a foreign language." United States v. Le, 256 F.3d 1229, 1238 (11th Cir. 2001). If the parties cannot agree on a stipulated transcript, "then each side should produce its own version of a transcript or its own version of the disputed portions." Id. (quoting United States v. Cruz, 765 F.2d 1020, 1023 (11th Cir. 1985)). When a defendant does not avail himself of this procedure, he "waive[s] his right to challenge the translation and

16

the transcripts." Id. Because Defendant did not produce any alternative transcripts, he has waived this argument.

Even if Defendant had preserved the argument, the Government adduced an adequate foundation for the transcripts. Under Federal Rule of Evidence 901(a), the proponent need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Here, Diaz testified that he was fluent in both Spanish and English, was able to read both languages, had listened to the wiretap recordings, and believed the translated transcripts accurately reflected the recorded conversations. Because Defendant had himself been a party to each of the conversations, he was in a very good position to authenticate the transcripts. See United States v. Hogan, 986 F.2d 1364, 1376 (11th Cir. 1993) (finding no error when a party to a English-language conversation authenticated the transcripts). So even if Defendant had not waived this argument, the district court did not abuse its discretion by admitting the transcripts.

## IV.

Defendant next claims the district court erred when it denied his request to submit the forfeiture allegations to a jury. Federal Rule of Criminal Procedure 32.2 governs criminal forfeiture actions. The Government argues the rule does not give Defendant a right to a jury determination of the forfeitability of a money

17

judgment as opposed to specific property. Because this question hinges on the

proper interpretation of a procedural rule, our review is *de novo*. United States v.

Beach, 113 F.3d 188, 189 (11th Cir. 1997).

> Federal Rule of Criminal Procedure 32.2(b)(1)(A) says,
>
> If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Subsection (b)(5) then says,

> (A) Retaining the Jury. In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.
>
> (B) Special Verdict Form. If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

Fed. R. Crim. P. 32.2(b)(5).

Although the rule's structure is somewhat confusing, its substance is not.

Subsection (b)(1)(A) tasks the district court with two functions. First, the court

"must determine . . . the requisite nexus between the property and the offense" for

18

forfeiture of specific property.  Second, the court must "determine the amount of money" for a money judgment forfeiture.  Clear enough so far.  But then Subsection (b)(5) creates an exception in jury cases.  In cases, "tried before a jury," the district court's initial task is to "determine . . . whether either party requests that the jury be retained to determine the forfeitability of specific property . . . ."  Fed. R. Crim. P. 32.2(b)(5)(A).  If neither party makes such a request, the district court will do the factfinding for both specific property and money judgment forfeitures.  But if a party requests that a jury determine the forfeitability of *specific property*, the district court must submit that question to the jury by way of a special verdict form.

The rule says nothing about a jury determining the amount of a money judgment.  By negative implication, a party is *not* entitled to a jury finding regarding a money judgment.  Instead, "*the court* must determine the amount of money that the defendant will be ordered to pay."  Fed. R. Crim. P. 32.2(b)(1)(A) (emphasis added).  Defendant's argument ignores the negative implication canon, often expressed in the Latin phrase *inclusio unius est exlusio alterius*.  This canon applies where "items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence."  Barnhart v. Peabody Coal Co., 537 U.S. 149, 168

19

(2003) (internal quotation marks omitted).  The Rule's inclusion of both money judgments and specific property forfeitures in subsection (b)(1)(A) and its exclusion of money judgments in subsection (b)(5) was obviously deliberate.  So we cannot read subsection (b)(5)'s jury procedures as applying to money judgments.

Our reading of the rule accords with precedent.  We held in an unpublished opinion that Rule 32.2 does not create a right to a jury determination for money judgment forfeitures.  United States v. Gray, 443 F. App'x 515, 523 (11th Cir. 2011) (rejecting the argument "that Federal Rule of Criminal Procedure 32.[2](b)(5) should be read to apply to personal money judgments").  The other circuits to address the question have reached the same conclusion.  United States v. Phillips, 704 F.3d 754, 771 (9th Cir. 2012); United States v. Gregoire, 638 F.3d 962, 972 (8th Cir. 2011); United States v. Tedder, 403 F.3d 836, 841 (7th Cir. 2005).  We remain persuaded that the court, not a jury, should determine the amount of a money judgment forfeiture.[3]

V.

---

[3] Defendant did not raise the Sixth Amendment, but we note that "the right to a jury verdict on forefeitability does not fall within the Sixth Amendment's constitutional protection." Libretti v. United States, 516 U.S. 29, 49 (1995).

Defendant raises several arguments regarding his sentence.  We review all sentences for reasonableness "under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007).  Reasonableness contains both a procedural and substantive component.  "A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008) (per curiam).  A sentence is substantively unreasonable only if the district court imposed a sentence "that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. McGarity, 669 F.3d 1218, 1264 (11th Cir. 2012) (quoting United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010)).  All of Defendant's arguments appear to be directed at his sentence's procedural reasonableness.

## A.

Defendant first argues he was entitled to a two-level mitigating role reduction to his offense level under U.S.S.G. § 3B1.2.  The Government incorrectly claims Defendant "did not assert this argument in the district court," and that we should only review for plain error.  Appellee's Br. at 82.  In fact,

21

Defendant's sentencing memorandum specifically addressed Guideline § 3B1.2 and asserted that Defendant "should receive a mitigating role reduction."  Record, sealed vol., Attachment to Addendum to Presentence Report at 8.  But even though Defendant raised this argument, he cannot prevail.  A two-level reduction under Guideline § 3B1.2 is only warranted if the defendant "is less culpable than most other participants."  U.S.S.G. § 3B1.2 cmt. n.5.  The evidence showed Defendant was Diaz's "right hand man," that he recruited at least four people into the organization, that he supplied the $17,000 down payment for a marijuana grow house, that he was responsible for paying several co-conspirators, that he served as a caretaker or supervisor at four houses, and that he participated in 25 to 30 marijuana harvests himself.  In light of this evidence, he was not "substantially less culpable than the average participant."  U.S.S.G. § 3B1.2 cmt. n.3(A).

B.

Next, Defendant claims the district court erred in denying his request for a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  But Defendant *never* admitted his factual guilt and went to trial instead.  The commentary to § 3E1.1 says the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and

22

expresses remorse." U.S.S.G. § 3E1.1 cmt. n.2. The commentary says in "rare situations" a defendant "may clearly demonstrate an acceptance of responsibility" despite going to trial. Id. The example it gives is "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." Id. This is not one of those rare cases, however, because Defendant never admitted his guilt, even after trial. His counsel conceded, "I'm asking for acceptance of responsibility, but, clearly, my client has not provided a statement of acceptance of responsibility." Record, vol. 3 at 1956. The district court said, "The Court is aware that [granting a reduction under § 3E1.1] is legally possible, but finds no facts in this case that would support doing that." Id. at 22. The court was quite right. We have held that a § 3E1.1 sentence reduction is inappropriate when a defendant "put the government to its proof and consistently attempted to minimize his role." United States v. Rubio, 317 F.3d 1240, 1244 (11th Cir. 2003).

Defendant's only argument on appeal is that denying the reduction impermissibly punished him for exercising his constitutional right to a jury trial. This is clever, but unconvincing. For one thing, "[o]ur case law permits a district court to deny a defendant a reduction under § 3E1.1 based on conduct inconsistent with acceptance of responsibility, even when that conduct includes the assertion of a constitutional right." United States v. Smith, 127 F.3d 987, 989 (11th Cir.

1997).  For another, if we accepted Defendant's argument, courts would have to give a

§ 3E1.1  reduction to *every* defendant who went to trial, no matter how vigorously he *denied* responsibility.  This would strip the term "acceptance of responsibility" of all meaning.  We therefore reject this argument.

C.

Next, Defendant claims the district court erred in denying his request for a downward departure under U.S.S.G. § 5K2.0 based on his cultural assimilation into the United States.  Defendant is a resident alien who has been in the United States since the age of nine.  "[A] district court's refusal to apply a downward departure is within the court's discretion and may not be appealed, provided the court recognized that it had the power to so depart from the guideline range." United States v. Willis, 649 F.3d 1248, 1258–59 (11th Cir. 2011).  Here, the district court recognized "the Court does, indeed, have the authority to depart downward," but it declined to do so.  Record, vol. 3 at 1969.  So we have no jurisdiction to review its decision.[4]

_____

[4] We note that cultural assimilation is ordinarily only relevant in prosecutions for illegal reentry of a removed alien.  See U.S.S.G. § 2L1.2 cmt. n.8.  In fact, the Eighth Circuit reversed a district court's downward departure for cultural assimilation when the defendant had been convicted of a drug offense.  United States v. Aguilar-Portillo, 334 F.3d 744, 750 (8th Cir. 2003).  The court observed, "A downward departure for 'cultural assimilation' could simply have no role in sentences for drug crimes . . . ."  Id.  So, although we have no occasion to decide the issue,

24

D.

Defendant argues the district court erred by denying him a variance based on inadequate proof regarding the number of marijuana plants. As discussed above, ample evidence supported the jury's finding that the conspiracy involved more than 1,000 plants. So the district court did not abuse its discretion in denying a variance.

E.

Finally, Defendant argues the district court improperly calculated his guideline range as 120–121 months, when the proper range was actually 97–121 months. Defendant misunderstands the Sentencing Guidelines. Ordinarily, Defendant's criminal history category and offense level would have produced a guideline range of 97–121 months. But Defendant was convicted of a crime that carries a mandatory minimum of 120 months, 21 U.S.C. § 841(b)(1)(A)(vii), and the Guidelines incorporate mandatory minimums into the guideline range. Under U.S.S.G. § 5G1.1(c)(2), the low end of the guideline range cannot be "less than any statutorily required minimum sentence." Thus, Defendant's guideline range

---

Defendant may have been out of luck even if the district court had *granted* the departure and if the Government had appealed.

25

was, indeed, 120–121 months.  See United States v. Castaing-Sosa, 530 F.3d

1358, 1360 (11th Cir. 2008) (per curiam).

AFFIRMED.