# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1827

_____

United States of America

*Plaintiff - Appellee*

v.

Mario Evans

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: January 15, 2016
Filed: July 27, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Mario Evans appeals his conviction for being a felon in possession of a firearm that was seized from his parked car without a warrant during a late-night investigation of possible criminal activity. See 18 U.S.C. § 922(g)(1). After his motion to suppress the firearm and other evidence obtained by means of an alleged Fourth Amendment violation was denied, a jury convicted Evans after a one-day trial, and the district

court[1] sentenced him to 221 months in prison. Evans appeals, renewing his Fourth Amendment argument. He further argues that Magistrate Judge Crites-Leoni should have recused rather than hearing his motion to suppress, and that the all-white venire panel violated his Sixth Amendment right to trial by an impartial jury. We affirm.

## I. The Suppression Issue.

At the suppression hearing, Charleston, Missouri, Police Officer Brent Douglas testified that, at approximately 11:45 P.M. on August 2, 2013, he was patrolling in a high crime area and saw a car with lights on parked behind a carwash that Douglas knew was vacant and being condemned. The area was dark because a pole light did not work and there was no electricity in the building. Douglas pulled in behind the car, got out of his vehicle, and saw another car in an open bay of the carwash and a person standing by the driver's side of that car. The person emerged from the bay and walked toward Douglas, who pointed his flashlight in that direction and recognized Evans. Douglas knew Evans had prior felony drug convictions and arrests for robbery and firearm offenses. Douglas also saw two other persons in the car he parked behind. He testified that he considered himself to be in a dangerous situation. As he met Evans between the two cars, he tried to keep an eye on both cars as he waited for backup assistance. Evans told Douglas that his family owned the carwash.

Douglas's backup, Officer Wesley McDermott, soon arrived and stood with Evans while Douglas walked to the carwash bay to verify "there wasn't another individual hiding within that vehicle" in the bay. He could not tell if there was anyone in the vehicle by shining his flashlight into the bay, so he walked into the bay, stood next to the car, and shone his flashlight on the right side of the interior without

---

[1] The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, adopting the recommendations of the Honorable Abbie Crites-Leoni, United States Magistrate Judge for the Eastern District of Missouri.

opening the car door. He saw a substance he recognized as marijuana and a handgun on the front passenger seat. McDermott then arrested Evans and did a pat-down search, discovering a small digital scale and keys for the car in the bay, which Evans admitted was his car.

The officers turned their attention to the two women in the other car. The driver, Evans's girlfriend, Latrisha Banks, consented to a search of the vehicle. The officers found cash in an envelope, loose marijuana, and a marijuana cigarette in the vehicle and arrested the women. After the arrests, officers searched the car in the bay and found that the firearm was loaded, and they found cash on the seat and additional marijuana in a cup behind the seatbelt buckle. At the police station, Evans asked what the charges were. Douglas replied he was being charged with drug possession with intent to distribute and being a felon in possession of a firearm. Evans said, "How are you going to charge me with a gun? It doesn't even work. I just got it yesterday."

At the hearing, the government introduced photographs showing that the open carwash bay was visible from the streets around the property. No signs prohibited trespassing. Evans's uncle, Fred Evans, testified that he owned the carwash, that it had been vacant for five or six years, and that he did not mind members of the public using his property so long as they did not destroy anything or use it for illegal purposes. Fred Evans testified that Evans had stayed in the carwash but had no ownership interest or control over the property. His nephew "was like all the other folks . . . they could use the property if they wanted to."

Evans testified at the suppression hearing. He acknowledged four prior felony convictions and being charged with other crimes, including armed robbery and assault. He testified that he parked his car in the bay around 6:00 P.M. on the day of the incident. There was then no gun and no marijuana in the car. As the bay was open, "Really, anybody could have went in." When Douglas arrived, Evans testified

-3-

he was in the back seat of Banks's car, which had stopped so the women could go to the bathroom. He was not standing by his car in the bay, as Douglas had testified.

Magistrate Judge Crites-Leoni filed a detailed Report and Recommendation (R&R) that Evans's motion to suppress be denied. The Magistrate Judge found credible Douglas's testimony that Evans was standing by his car when Douglas arrived, and not credible Evans's testimony about why he was at the carwash when Douglas arrived. She recommended that the motion to suppress be denied because Douglas's warrantless flashlight search of Evans's car in the vacant carwash bay and the seizure of contraband Douglas observed fell within the plain view exception to the Fourth Amendment's warrant requirement: Douglas had reasonable suspicion that criminal activity was afoot, which justified his entry into the bay for a protective search for other persons; and the gun and marijuana were contraband in plain view that could be immediately seized from Evans's automobile. The district court overruled Evans's objections, adopted the R&R, and denied the motion to suppress.

On appeal, Evans argues that the flashlight search of his car and seizure of the contraband observed inside violated the Fourth Amendment, and thus all evidence seized from the car, from his person after arrest, and statements he made in custody should be excluded as fruit of the poisonous tree. "In considering the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*." United States v. Kelley, 652 F.3d 915, 917 (8th Cir. 2011). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971) (plurality opinion) (quotation omitted). One of those long-standing exceptions is the plain view doctrine. Id. at 465-68.

The plain view doctrine permits the warrantless seizure of evidence if the officers "are lawfully in a position from which they view the object, the incriminating

character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Brown, 653 F.3d 656, 661 (8th Cir. 2011) (alteration omitted), cert. denied, 132 S. Ct. 1649 (2012), quoting United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010).

The government argues the first of these prerequisites -- whether Officer Douglas was "lawfully in a position" to see the contraband in Evans's car -- is not an issue in this case because "Evans lacked standing to contest the officer's entry into the open bay" as he had no reasonable expectation of privacy in that area. We are inclined to agree that Evans had no reasonable expectation of privacy in the carwash bay, but we reject the government's contention. Evans had a reasonable (though limited) expectation of privacy in his car and therefore standing to object to its warrantless search. Having invoked the plain view exception to justify that search and resulting seizure, the government had the burden to prove the exception applied. "[A]n essential predicate to any valid warrantless seizure of incriminating evidence [is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton v. California, 496 U.S. 128, 136 (1990). Thus, in prior decisions upholding under the plain view doctrine searches of vehicles parked on another person's private property, we first concluded that police officers engaged in ongoing law enforcement "ha[d] a right to be in close proximity to the vehicle." Brown, 653 F.3d at 661, quoting United States v. Bynum, 508 F.3d 1134, 1137 (8th Cir. 2007); accord United States v. Hatten, 68 F.3d 257, 260 (8th Cir. 1995), cert. denied, 516 U.S. 1150 (1996).

In this case, the district court concluded, and we agree, that Officer Douglas had reasonable suspicion that criminal activity was afoot when he pulled in behind Banks's car -- parked in an abandoned carwash parking lot late at night with its lights on -- to investigate what the car's occupants might be doing in this high-crime area. Douglas saw Evans, a known felon, standing by another car in the dark carwash bay. Douglas recognized Evans when he emerged from the bay, and believed he was in a

dangerous situation. Douglas called for backup and, after Officer McDermott arrived to stay with Evans, went to see if other persons were hiding in Evans's car.

When an officer has reasonable suspicion to make what is commonly known as a Terry stop,[2] it is well-established that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." Michigan v. Long, 463 U.S. 1032, 1049 (1983). In these situations, the most common protective actions are a frisk of the suspect, as in Terry, or a limited search of the car for weapons, as in Long. But the governing principle is whether the officer making the Terry stop, here Officer Douglas, "had an objectively reasonable concern for officer safety that justified" actions he took in response to the suspected danger. United States v. Smith, 645 F.3d 998, 1003 (8th Cir.), cert. denied, 132 S. Ct. 594 (2011); see United States v. Goodwin-Bey, 584 F.3d 1117, 1120-21 (8th Cir. 2009), cert. denied, 559 U.S. 961 (2010).

The Fourth Amendment permits a quick and limited search of the premises during an in-home arrest, if the arresting officers reasonably suspect there may be others present who pose a danger to them. See United States v. Green, 560 F.3d 853, 856 (8th Cir.), cert. denied, 558 U.S. 879 (2009), citing Maryland v. Buie, 494 U.S. 325, 327 (1990). The same safety concern has justified protective searches of vehicles while executing a search warrant. See United States v. Thomas, 249 F.3d 725, 729-30 (8th Cir. 2001). Likewise, we conclude that Officer Douglas's reasonable concern for officer safety justified his entering an open bay in an abandoned carwash to see whether other persons were hiding in a car where a dangerous suspect was seen engaging in suspicious activity. Thus, as in Hatten, 68

---

[2]Named for Terry v. Ohio, 392 U.S. 1 (1968).

F.3d at 260, Douglas had a "prior justification" for the intrusion that put him in close proximity to the car, from where he could plainly view the contraband inside.

Having justifiably entered the carwash bay, Douglas's "action in shining his flashlight to illuminate the interior of [Evans's] car trenched upon no right secured to the latter by the Fourth Amendment." Texas v. Brown, 460 U.S. 730, 739-40 (1983) (plurality opinion); see Hatten, 68 F.3d at 261 ("[A] person who parks a car -- which necessarily has transparent windows -- on private property does not have a reasonable expectation of privacy in the visible interior of his car."); cf. United States v. Dunn, 480 U.S. 294, 304-05 (1987).

The second and third prerequisites to a valid plain view search and seizure require little discussion in this case. Lawfully in the bay, Douglas shined his flashlight and saw a substance he recognized as marijuana, and a firearm that he knew Evans as a convicted felon could not lawfully possess. "During a properly limited protective sweep, the police may seize an item that is in plain view if its incriminating character is 'immediately apparent.'" Green, 560 F.3d at 856. As in United States v. Rodriguez, the incriminating nature of the gun was apparent because it was in close proximity to illegal drugs and Evans could not lawfully possess it. 711 F.3d 928, 936-37 (8th Cir.), cert. denied, 134 S. Ct. 715 (2013).

Regarding whether the officers had a lawful right to access and seize the evidence Douglas saw in plain view, probable cause to believe that an automobile contains contraband that is subject to seizure and destruction has long been held to justify a warrantless search of the automobile and seizure of the contraband. See United States v. Ross, 456 U.S. 798, 806-07 (1982); Brown, 460 U.S. at 739-41 & n.6. Given the obviously incriminating nature of the gun and drugs that Douglas saw, the officers "had probable cause to enter the parked -- but highly mobile -- vehicle, without a warrant, and to seize" the evidence. Brown, 653 F.3d at 662.

As there was no unlawful search and seizure of contraband seen in plain view in Evans's car, his contention that other evidence should be suppressed as fruit of the poisonous tree necessarily fails. See United States v. Long, 797 F.3d 558, 569 n.7 (8th Cir. 2015).

## II. The Recusal Issue.

At the start of the suppression hearing, Evans's counsel expressed concern that Magistrate Judge Crites-Leoni was potentially biased because she was appointed to the bench just over two months earlier, after serving as an Assistant United States Attorney ("AUSA") in the Southeastern Division of the Eastern District of Missouri's United States Attorney's Office from 2000 to January 31, 2014. Counsel noted that Evans's case was pending before Crites-Leoni left the Office, and that the government lawyer in this case, AUSA Larry Ferrell, had been her supervisor. Evans's counsel stated that "Mr. Evans is concerned about that and wishes to make an objection." In response, AUSA Ferrell responded:

> I will state that this is a matter for which you [Crites-Leoni] had no involvement or participation or personal knowledge during its existence at the U.S. Attorney's office, so, therefore, we believe that . . . it would be appropriate for you to hear this case.
>
> If we were to use the standard that any case that existed in the office when you were there, we would be disqualifying cases for the next several years. And it's our understanding that this is the policy and practice that has been followed with previous magistrates . . . .

Magistrate Judge Crites-Leoni overruled Evans's objection, explaining that she understood his concern, that she had longstanding professional relationships with both attorneys, and that "[t]here is nothing about those relationships that will influence me as far as whether or not I listen to all the evidence in the case and

-8-

consider that in making any decision with regard to the motion that you filed." She asked, "Do you feel better, Mr. Evans, about how I'm going to treat your case?" He responded, "Yes, ma'am." The magistrate judge's R&R did not refer to this issue. In his Objections to the R&R, Evans's first objection was to "renew" his objection to Magistrate Judge Crites-Leoni conducting the suppression proceedings. The district court "Sustained, Adopted and Incorporated" the R&R and denied Evans's motion to suppress without referring to this issue.

On appeal, Evans argues "The Magistrate Judge Erred in Denying [his] Motion for Her Disqualification," asserting for the first time that then-AUSA Crites-Leoni had cross-examined Evans in a prior, unrelated 28 U.S.C. § 2255 motion hearing in 2006.[3] Evans argues that her recusal was required by 28 U.S.C. § 455(a) ("Any . . . magistrate judge . . . shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned."), and by § 455(b)(3) (A former government attorney shall recuse where, as government employee, she "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."). We review recusal decisions for abuse of discretion. See United States v. Oaks, 606 F.3d 530, 536 (8th Cir. 2010).

The short answer to this contention is that it was not properly preserved for appeal. "Once the proceedings at issue are concluded, a post hoc motion for recusal will do little to remedy any appearance of bias that was present." United States v. Diekemper, 604 F.3d 345, 352 (7th Cir. 2010). Therefore, "any grounds for recusal must be asserted promptly." Perkins v. Spivey, 911 F.2d 22, 33 (8th Cir. 1990), cert denied, 499 U.S. 920 (1991). Here, Evans timely raised his objection to Magistrate

---

[3]We decline to consider a § 455 argument raised for the first time on appeal based on facts that are not part of the record on appeal. See United States v. Coon, 187 F.3d 888, 900-01 (8th Cir. 1999), cert. denied, 529 U.S. 1017 (2000).

Judge Crites-Leoni conducting the suppression hearing. But he did not promptly appeal her decision to the district court; instead, he indicated that she had satisfied his concern. When the magistrate judge issued her adverse R&R, Evans again did not appeal the denial of a motion to recuse to the district court. Rather, he "renewed" his objection to her conducting the proceedings as his first objection to the R&R. The district court then made "a de novo determination of those portions of the . . . proposed findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1), and adopted the findings and recommendation of the R&R, which contained no discussion of the recusal issue.

On this record, the only issue preserved for appeal is one that Evans does not raise -- whether the district court abused its discretion in conducting a *de novo* review of the merits of Evans's motion to suppress, rather than ruling that Magistrate Judge Crites-Leoni should have recused and then either conducting *de novo* review taking that ruling into account, or referring the motion to a second magistrate judge for a second set of preliminary findings and recommendations. Had the issue been raised on appeal, it is obvious there was no abuse of discretion by the district court. Evans's contention that § 455(b)(3) required Magistrate Judge Crites-Leoni to recuse because of her prior work as AUSA is without merit. "[A]n AUSA without any involvement in a case brought by other attorneys in [her] office is not required to disqualify [herself] from presiding over such a case under 28 U.S.C. § 455(b)(3)." Kendrick v. Carlson, 995 F.2d 1440, 1444 (8th Cir. 1993).

### III. The Jury Panel Issue.

Evans, an African-American, argues that his Sixth Amendment right to trial by an impartial jury was violated because all thirty-six potential jurors on the venire panel were white. Defense counsel raised this issue when the panel first entered the courtroom. Following voir dire, during which both attorneys asked jurors whether they had any racial bias, counsel asked the district court to strike the venire panel and

declare a mistrial. The court noted that it was "unusual that there are no African-Americans on the panel," but denied the requests because "this jury panel has been selected in the usual course randomly." On appeal, Evans argues the district court denied his Sixth Amendment right to trial by an impartial jury when it denied his motion for mistrial and a new jury panel. We review this issue *de novo*. United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998).

The Sixth Amendment guarantees those accused of a crime the right to trial by an impartial jury "drawn from a fair cross-section of the community." United States v. Jefferson, 725 F.3d 829, 835 (8th Cir. 2013), cert. denied, 134 S. Ct. 1954 (2014). To establish a prima facie case of a fair-cross-section violation, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community, such as African-Americans; (2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to "systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). "The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process." Jefferson, 725 F.3d at 835 (quotation omitted).

In this case, Evans presented no evidence that the lack of African-American jurors was due to systematic exclusion of the group in the jury selection process, so his claim must fail. See Scott v. James, 902 F.2d 672, 675 (8th Cir.), cert. denied, 498 U.S. 873 (1990). "Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." Singleton v. Lockhart, 871 F.2d 1395, 1399 (8th Cir.), cert. denied, 493 U.S. 874 (1989).

The judgment of the district court is affirmed.

_____

-11-