# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-3068

———————————————

United States of America

*Plaintiff - Appellee*

v.

Chimanga Smith

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Springfield

——————————

Submitted: November 20, 2020
Filed: March 5, 2021

——————————

Before COLLOTON, MELLOY, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

In January 2019, a jury convicted Chimanga Smith of possession with the intent to distribute five or more grams of actual methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking

crime, 18 U.S.C. § 924(c). The district court[1] sentenced him to a total of 170 months' imprisonment. Smith now appeals, arguing that the district court erred in (1) denying his motions to suppress physical evidence seized and incriminating statements he made at the time of his arrest, and (2) refusing to instruct the jury on the lesser-included offense of simple possession of methamphetamine. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

I.

On the evening of April 27, 2017, Sergeant Justin Gargus of the Springfield Police Department in Missouri was on patrol when he noticed a female passenger in a silver Nissan Maxima staring directly at his unmarked police vehicle. He soon discovered that the license plate on the Nissan was actually registered to a 1997 Oldsmobile, in violation of state law. Quickly activating his emergency lights, Gargus tried to conduct a traffic stop based on the registration violation, but the Nissan accelerated and kept driving. Because it was against department policy to pursue the car, Gargus reported the incident to dispatch and to fellow officers over the radio. He then got a call from Officer Cooney, who said he had seen Chimanga Smith driving the same Nissan Maxima a few days earlier.

Within the hour, two other officers—Eric Pinegar and Benjamin Rauch—spotted the Nissan Maxima at a gas station and informed Sergeant Gargus. Together, the three officers surrounded the Nissan with their police vehicles and boxed it in. Gargus recognized the driver as Smith, who he knew had a felony conviction. Gargus then identified himself as a police officer and ordered Smith to exit the car with his hands raised, but Smith did not immediately comply. Instead, Smith reached down in front of the driver's seat and then to the left between the seat

---

[1]The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri.

and the door. Gargus repeated the orders. Smith eventually complied and was handcuffed. At about the same time, the front-seat passenger came out of the convenience store and a second woman, whom officers had not previously noticed, got out of the rear driver's-side door of the Nissan.

With Smith's consent, Sergeant Gargus searched him and found no drugs or weapons. He advised Smith of his Miranda rights, after which Smith proceeded to answer Gargus's questions.[2] Smith acknowledged that he had driven away from law enforcement in the Nissan earlier, but he did not explain why he failed to stop. When asked whether he had anything illegal in the car, Smith responded, "I mean, to me." At trial, Gargus testified that he interpreted this response to mean that Smith had a firearm in the car, because a person with a prior felony conviction cannot legally possess a firearm, "whereas drugs would be illegal for anyone to possess." Gargus placed Smith under arrest for "felony fleeing," a state-law offense. See Mo. Rev. Stat. § 575.150.

By that point, two more officers had arrived on the scene: Officer Adam Rowles and Corporal Jason Friend. As Sergeant Gargus was talking to Smith, Corporal Friend shined his flashlight through the front windshield of the Nissan and noticed a handgun partially sticking out from under the driver's seat. When the back-seat passenger, now standing outside the car, asked for her jacket, Corporal Friend retrieved it from the Nissan for her. When he did, he noted the car smelled like marijuana. Officer Rowles checked the jacket for contraband and found a burnt marijuana cigarette in one of the pockets; and like Corporal Friend, he smelled the scent of marijuana coming from inside the Nissan.

---

[2]Smith does not challenge the voluntariness of his Miranda waiver on appeal. See United States v. Machorro-Xochicale, 840 F.3d 545, 549 n.2 (8th Cir. 2016) (concluding that defendant "voluntarily waived his rights when he acknowledged that he understood the Miranda warnings and voluntarily answered [the officer's] questions").

Sergeant Gargus then asked Smith about the gun in the car, and Smith said it was a "Bersa .380." Smith also admitted that the gun and the small black bag on the driver's seat were both his. Gargus then searched the car, photographing and seizing the gun. When he opened the small black bag, he found smaller plastic bags of substances that looked like crystal methamphetamine, heroin, and marijuana; a digital scale; and multiple empty plastic bags.[3] There were also two additional pouches in the backseat containing methamphetamine and a second digital scale. On the way to the Greene County Jail, Smith told Gargus that the only drug he used was marijuana, and that he was just selling the methamphetamine and heroin for extra money. He also said he had been to prison before and that he needed the gun for protection in case he was ever robbed.

Before trial, Smith moved to suppress all evidence seized from the Nissan Maxima and all statements he made during his encounter with law enforcement. After two evidentiary hearings, the district court denied the motions with one exception: the court suppressed all statements Smith made before receiving Miranda warnings. The district court also denied Smith's request for a jury instruction on the lesser-included offense of simple possession of methamphetamine. Smith was convicted after trial, and this appeal followed.

II.

Smith first argues that the officers did not have reasonable suspicion or probable cause to detain him and, therefore, all evidence seized from the car and all statements he made to the officers should have been excluded as fruits of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 485 (1963)

---

[3]The parties later stipulated that the crystal substance in the black bag contained 13.65 grams of actual methamphetamine.

(explaining that, under the Fourth Amendment, verbal or tangible evidence obtained from an unlawful search or seizure is excludable as the "'fruit' of official illegality"). In considering the denial of a motion to suppress, "[w]e review the district court's legal conclusions de novo and its factual findings for clear error." United States v. Charles, 895 F.3d 560, 564 (8th Cir. 2018). That is, we will affirm the district court's decision "unless it misstates the law, is unsupported by substantial evidence, or, after reviewing the record, we are left with the definite and firm conviction that a mistake has been made." United States v. Dunn, 928 F.3d 688, 692 (8th Cir. 2019) (cleaned up).

Here, the officers had probable cause to detain Smith based on the registration violation alone. See, e.g., United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008) ("Any traffic violation, however minor, provides probable cause for a traffic stop." (quoting United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc))). And given his earlier flight in the Nissan, it was not unreasonable for the officers to effectuate the stop by blocking the car in, or for Sergeant Gargus to ask Smith to step out of the car with his hands raised. See United States v. Jones, 759 F.2d 633, 638 (8th Cir. 1985) ("Blocking generally will be reasonable when the suspect is in a vehicle because of the chance that the suspect may flee upon the approach of police with resulting danger to the public as well as to the officers involved."). Moreover, Smith's initial failure to comply with Gargus's commands—while making furtive movements and reaching down below the officers' line of sight—together with the car's earlier flight, made it reasonable for the officers to handcuff him. Cf. United States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999) ("During a Terry stop, officers can check for weapons and may take any additional steps that are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." (cleaned up)). And finally, even putting aside Smith's admission that he had been driving the Nissan earlier, there was probable cause to arrest him for fleeing that traffic stop. Though Gargus did not see the driver of the Nissan when it sped off, he had a reasonable basis to believe the driver was Smith given the

-5-

proximity in time between the initial flight and the completed stop, as well as Officer Cooney's statement that he recently had seen Smith driving the same car. See Bell v. Neukirch, 979 F.3d 594, 603 (8th Cir. 2020) ("[A] warrantless arrest . . . is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004))).

Smith next argues that, even if his detention and arrest were lawful, the warrantless search of the car was not. "When probable cause exists to believe that contraband is located inside the vehicle, a police officer may search the passenger compartment and trunk under what is known as the automobile exception." United States v. Oliver, 950 F.3d 556, 563 (8th Cir. 2020) (cleaned up). Once Corporal Friend reported seeing the gun on the driver's-side floorboard, Sergeant Gargus had the requisite probable cause to search the vehicle. And based on the smell of marijuana emanating from the car and the marijuana cigarette found in the passenger's jacket, the officers also had probable cause to search the entire vehicle for drugs and drug paraphernalia. See United States v. Olivera-Mendez, 484 F.3d 505, 512 (8th Cir. 2007) ("If probable cause justifies the search of [a] lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (quoting United States v. Ross, 456 U.S. 798, 825 (1982))).

Nevertheless, Smith argues that Corporal Friend violated his Fourth Amendment rights by looking through the windshield of the Nissan with a flashlight. Because Smith and both passengers were outside the car at the time, Smith contends there was no reason for the officers to look inside the vehicle. But "[t]he plain view doctrine permits the warrantless seizure of evidence if the officers are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Evans, 830 F.3d 761, 766 (8th Cir. 2016) (cleaned up). Thus, after

Sergeant Gargus had lawfully initiated the traffic stop and detained Smith, Corporal Friend's "action in shining his flashlight to illuminate the interior of [Smith's] car trenched upon no right secured to the latter by the Fourth Amendment." Texas v. Brown, 460 U.S. 730, 739-40 (1983) (plurality opinion); see also Evans, 830 F.3d at 767 (affirming denial of motion to suppress under plain-view doctrine where officer shone a flashlight inside car and saw a firearm and substance he recognized as marijuana).

Because Smith's detention and the search of the Nissan Maxima were lawful, the district court did not err in denying his motions to suppress.

III.

Smith also appeals the district court's refusal to instruct the jury on the lesser-included offense of simple possession of methamphetamine. "We review for abuse of discretion the district court's decision not to give a lesser-included-offense instruction." United States v. Mazzulla, 932 F.3d 1091, 1102 (8th Cir. 2019) (quoting United States v. Almeida-Olivas, 865 F.3d 1060, 1064 (8th Cir. 2017)).

An instruction on a lesser-included offense is warranted where "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." Id. at 1101 (quoting Almeida-Olivas, 865 F.3d at 1064). More specifically, a defendant is entitled to a jury instruction on a lesser-included offense if:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included

offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or the defense.

Id. at 1101-02 (cleaned up) (quoting United States v. Parker, 32 F.3d 395, 400-01 (8th Cir. 1994)). In this case, only elements (3) and (4) are at issue—whether there was evidence to justify a conviction on simple possession and whether the proof on the elements differentiating the two crimes was sufficiently in dispute. Here, these elements are closely related.

Although Sergeant Gargus testified at trial that Smith admitted to selling methamphetamine, in Smith's view, the evidence of his intent to distribute was "far from overwhelming." Smith argues that because his conversation with Gargus during the ride to the jail was not recorded, "the jury did not have to believe that [Smith's] statement occurred." While that is true, Gargus was not the only person who testified on the issue of "intent to distribute." Agent Mark Hooten from the Drug Enforcement Administration testified that most methamphetamine users have only about two to three grams in their possession at any given time, whereas someone carrying 14 to 28 grams would "typically be . . . a dealer." He also testified that dealers often have firearms for protection, scales and baggies, and large amounts of money on their person. Users, on the other hand, are more likely to have either needles for injecting the methamphetamine or glass pipes, spoons, straws, or other materials that can be used to smoke it. Here, Smith had none of this user-type paraphernalia. And though he was not carrying much money when he was arrested, the officers found a gun, several baggies, two scales, and 13.65 grams of methamphetamine. Even without Smith's admission, the government had strong evidence of an intent to distribute.

Smith relies on United States v. Gentry, 555 F.3d 659 (8th Cir. 2009), for the proposition that possessing a larger quantity of methamphetamine along with distribution-type paraphernalia does not preclude a jury instruction on the lesser-included offense of simple possession. But Gentry is distinguishable. Recall that a

lesser-included-offense instruction requires "evidence which would justify" a finding of simple possession.  See Mazzulla, 932 F.3d at 1101 (cleaned up).  Although the defendant in Gentry possessed 24.30 grams of methamphetamine, as well as coffee filters and other manufacturing paraphernalia, it was particularly salient that the methamphetamine was in liquid form.  555 F.3d at 668.  The government there provided evidence that methamphetamine sold on the street is usually a grainy or crystal substance, not liquid, and that the quantity in Gentry's possession would likely produce only around one gram of powder, "which is a user amount."  Id.  This evidence was therefore probative of possession for personal use, which left "the issue of Gentry's intent to distribute sufficiently in dispute" so as to warrant a lesser-included-offense instruction.  Id. at 669 (cleaned up).  The same is not true here.  The district court did not abuse its discretion in denying Smith's request for a jury instruction on the lesser-included offense of simple possession of methamphetamine.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____